LAMB ENTERPRISES, INC., a Delaware corporation (Dispatch, Inc.), Plaintiff,

v.

CITY OF ERIE and Council of the City of Erie, Defendants,

and

Erie Television Corporation, Intervenor.

Civ. A. No. 87–65.

United States District Court
W. D. Pennsylvania.

July 28, 1967.

John M. Wolford, Erie, Pa., for Lamb Enterprises, Inc.

John English, Joseph M. Walsh, Jr., Erie, Pa., for Erie Television Corp.

## OPINION

WILLSON, District Judge.

This civil action was remanded to this Court for further proceedings in accordance with the direction of the Court of Appeals, Dispatch, Inc. v. City of Erie, 364 F.2d 539 (3 Cir.1966). When the judgment was vacated, the case proceeded in due course. Plaintiff filed interrogatories directed to defendants and intervenor. Answers were filed and certain objections were heard and determined. Pretrial narrative statements were filed by all parties. A pretrial conference was held. The case then came on for trial which was originally fixed for May 8, 1967. But on that date, Mr. Walsh, attorney for the city, indicated that Erie City Council was expected to repeal Ordinance 39–1965, which is the basis for the subject suit. Trial was then postponed for one week, but on May 15th it was indicated that City Council awaited the decision of this Court. An evidentiary trial was then held on July 24, 1967 at which time all evidence which any of the parties sought to present was received and witnesses heard. In my first decision, D.C., 249 F.Supp. 267, on motions for summary judgment, the injunction was denied and the complaint dismissed. In the Court of Appeals' opinion, Judge Biggs said—

> "We deem the record here to be inadequate to permit the adjudication of the issues presented for the reasons set out hereinafter."

The Court then suggested five areas which this Court was to examine. It

found that this case is of major importance and that it should be disposed of promptly. The opinion further mentioned that the parties—

"* * * must be given an opportunity to present a full and adequate record in order that the constitutional questions which are asserted may be passed upon adequately." [364 F.2d p. 542].

It is this Court's considered judgment that the record made before me is so meager and inadequate that there is no legal basis for the issuance of an injunction. No amendment to the complaint was offered although the footnote, page 542, was called to plaintiff's attention. The parties were given full opportunity to present evidence on all issues of the case. Plaintiff's pretrial narrative indicated that it would present evidence in the first four categories mentioned in Judge Biggs' opinion. But the evidence presented was scanty. Neither defendants nor the intervenor offered any evidence. The Clerk's record indicates that the trial commenced at 1:30 p.m. and was concluded at 3:15 p.m. But 2 witnesses were sworn and testified. In this Court's view neither witness presented any relevant factual evidence. Evidence was introduced that the proposed installation by a CATV franchise holder authorized under the ordinance would install equipment of the category mentioned in United Artists Tele., Inc. v. Fortnightly Corp., 255 F.Supp. 177, a CATV case decided by Judge Herlands, (S.D.N.Y.), at a cost of $2,000,000.00 within 5 years. (Answer to Interrogatory No. 7). The city offered no evidence as to the installation costs. An area suggested by the Court of Appeals for exploration is the constitutionality of the franchise payment or tax, depending on whether Erie CATV is purely a matter of local suzerainty or whether the proposed tax is of such a nature as to impose a burden on interstate commerce. The parties did not present any factual evidence on this issue. The reason is obvious. For one thing, the city ordinance does not fix a charge fee or tax. It provides that the applicant in his bid for a CATV franchise, [Section 5], set the fee for the use of the city-owned facilities. But the intervenor answered by estimating that the revenue to the city would probably run between $10,000.00 and $30,000.00 per year. No bids have been opened or accepted by the city. It is to be kept in mind that any one bidder may not receive an exclusive franchise covering the whole city. Such then is this trial record on the point made by Judge Biggs—

"* * * that the record furnishes no adequate description of how the CATV system in the City of Erie might be arranged or how much it would cost." [364 F.2d p. 542].

Plaintiff presented but meager evidence relating to the third, fourth and fifth areas mentioned by Judge Biggs. The witness was Arthur M. Ingram, Vice President and General Manager of plaintiff Dispatch, Inc., which, as stipulated, has been merged with Lamb Enterprises, Inc., a Delaware corporation, and the caption of the case is amended accordingly. This witness was interrogated with regard to whether plaintiff would suffer material or irreparable harm if an injunction be not granted. His answers were speculative and conjecture only. He apparently was not permitted by his superiors to testify of record as to any financial figures of the plaintiff Dispatch, Inc. He talked in generalities and stated personal opinions. He was certain that a cable system, which would pick up distant signals and relay them to subscriber's homes via cable, would result in a "definite dilution of plaintiff's audience followed, axiomatically I believe, by a dilution of income. The evidence of this witness was the principal support of plaintiff's contention that plaintiff would suffer material and irreparable harm if an injunction was not granted. His opinion is a partisan one and not based on supporting facts. His opinion carries but little weight and is not persuasive on the issue of irreparable harm.

What has been said is a review of the trial evidence introduced before me in a very short trial. This review is not intended as criticism, but an analysis of the trial evidence shows the lack of disputed facts. The Court believes that what has been susceptible of proof has been presented, and in any event it is not disputed. But the record contemplated by Judge Biggs simply cannot be made at this time. It may be made at a future time if and when Erie accepts a proposal and issues a franchise for the construction and operation of a CATV system.

It is to be emphasized again that the claim for relief in this case is for injunction only. This injunction is sought against a legislative body in the third largest city in the State of Pennsylvania, a city of some 130,000 inhabitants. CATV is in the process of mushroom growth. This is shown in several decisions in the various courts. The law on the subject of CATV is likewise in the process of development. This Court is frank to say that it is unable to project with any certainty the final decision of the regulatory bodies and the appellate courts on this subject. But a very recent decision—Buckeye Cablevision, Inc. v. Federal Communications Commission, 387 F.2d 220, Court of Appeals for the District of Columbia—handed down June 30, 1967 seems to point to the ultimate regulation of CATV by the Federal Communications Commission, if not by the Congress direct. At the onset of this trial, the Court inquired of counsel as to whether Erie was in one of the largest 100 television markets as mentioned in Buckeye. Release G No. 79,-927 of the Federal Communications Commission relates to the issue of preemption which is the first area mentioned by Judge Biggs for examination by this Court. FCC determines the top 100 television markets by ratings made by the American Research Bureau. The attorneys who appeared in this case indicated to the Court that the City of Erie stands close to but is not in the top 100 markets as determined by ARB. It was said that Erie stands at perhaps 102 but at least no higher than 106 after the top 100. Even after the issuance of the regulation, it is still uncertain as to the extent which FCC now regulates CATV stations in television markets outside the top 100. It says in the regulation that it may do so under its own initiative. It says also that no CATV system may operate without notice to a competing licensed television station which in turn may object. The Buckeye decision is concerned with a CATV system in a 100 market. But FCC reserves the right unto itself to increase the area by adding television markets to the top 100. As counsel for the plaintiff indicated, the dividing line may not always remain 100, and Erie may be ultimately in a fully regulated area. In this respect, FCC has indicated in its regulations that no CATV system outside the top 100 markets is free from regulation, but the Commission will examine these various situations on an ad hoc basis. This Court is reluctant to issue an injunction in this case. It is axiomatic that—"The power of the courts to issue injunctions should be exercised with great caution and only where the reason and necessity therefor are clearly established." See 43 C.J.S. Injunctions § 15. It is dangerous in a doubtful case. In Law Week for July 11th, it is indicated that the Government will seek Supreme Court review of a Ninth Circuit decision which conflicts with the Buckeye case. The question then remains whether the evidence before me shows such a probable violation of a clear right vested in plaintiff that an injunction against the City of Erie should issue because it passed the ordinance. In Buckeye it is said that there is no First Amendment violation in regulating CATV although as it said—

"It is true that CATV systems disseminate programs carrying a wide range of information. But we think the restraint imposed by the rules is no more than is reasonably required to effectuate the public interest re-

quirements of the Act." [Citing cases].

The rights of plaintiff in the areas under discussion are doubtful. For instance, it has no legal right to claim that it is to remain one of 3 television stations authorized for Erie. When this case was filed there were but 2 stations in the City of Erie. The complaint was filed September 24, 1965. The FCC authorized Station WJET to commence business in the spring of 1966 after the inception of this suit. Plaintiff's audience has been diluted in a legal manner. One thing plaintiff asks this Court to do is to project the impact of CATV upon its receiving audience when, according to Mr. Ingram, plaintiff is unable to state clearly the extent of the impact. For instance it seems conceded by plaintiff under Mr. Ingram's testimony that in cities where CATV competes with local stations the majority of the homes will stay tuned to the local television station rather than get television through CATV from a distant city. An injunction in this case is not needed in all instances to prevent dilution because the ordinance, Section 18, prohibits duplication of programming by CATV with the 3 local stations. It is well to mention here also that the ordinance provides that if it has regulated matters within the ultimate authority of FCC the ordinance is considered to be repealed pro tanto.

■ It seems to this Court that it is but an exercise in common sense to deny an injunction under the evidence in this case. The application for an injunction is premature in many respects. For instance, plaintiff lays great stress upon the unconstitutionality of the ordinance with respect to taxing interstate commerce, citing Chicago v. Atchison, T. & S. F. R. Co., 357 U.S. 77, 78 S.Ct. 1063, 2 L.Ed.2d 1174, and a later case of the Supreme Court decided March 27, 1967 —Railroad Trans. Service Inc., v. City of Chicago, 386 U.S. 351, 87 S.Ct. 1095, 18 L.Ed.2d 143. But in *Atchison*, the Court concludes—

"Similarly the City may require registration of these vehicles and exact reasonable fees for their use of the local streets." (Citing cases).

The question is always open whether the fee or tax imposed is an unreasonable restraint or burden. It is my view that the proposed change under the ordinance comes within the purview of Capitol Greyhound Lines v. Brice, 339 U.S. 542, 70 S.Ct. 806, 94 L.Ed. 1053 in which a tax of 2 per cent upon the fair market value of motor vehicles used in interstate commerce as a condition precedent to the issuance of certificates of title thereto and to the operation of the vehicles in the State of Maryland, was held constitutionally valid. It was held also in this case that such a tax must be judged by its result and not by its formula. It must stand unless proven to be in excess of fair compensation for the privilege of using the roads. In Erie in this case the equipment to be installed —some 2 million dollars in value, such as cables and even the erection of poles —will occupy city property aside even from the streets. Cables either underground or in the air must be provided from the CATV antenna to the receiving set in the homes. There is no basis for any decision now that a fee fixed by the legislative body of the city will be per se unconstitutional because exorbitant or unreasonable. It certainly can be asserted that the city is entitled to establish and collect some remuneration for the occupancy of the municipal property by a private system. This Court is not in a position to tell Erie City Council what its fees should be for the occupancy of its property by a CATV system. On this point in the case the suit is premature. This Court has been informed by counsel that a suit is pending in the State Court attacking the legality of the instant ordinance. At a proper time this Court or any other proper Court may examine into the reasonableness of the fee or charges fixed by the city in the event that it does award a franchise.

■ On the third area mentioned by Judge Biggs, that is, the *locus standi*

to maintain the suit, the record is still as cloudy and unclear as it was when before the Court of Appeals. According to *Buckeye*, the transmission of a television signal and programming is under FCC jurisdiction. In 47 CFR, Subpart K is entitled—"Community Antenna, Television Systems." In § 74.1101, the terms are defined. Section 74.1103 is entitled —"Requirement relating to distribution of television signals by community antenna television systems." Under this section no distinction is made with reference to duplication and programming between CATV systems in Grade A and B contours and those systems outside those contours. To the latter extent, at least, an Erie CATV system will be regulated by FCC. But the query is as to whether Dispatch has standing to maintain this suit. In the first place it is an FCC licensee and is itself regulated. It is clear that FCC is proceeding on an ad hoc basis to regulate CATV systems generally. FCC may very well adopt regulations which will lessen competitive impact between plaintiff and the proposed CATV. This area is a new one in the complex world in which we exist. When a franchise is let, and a firm agreement reached, then these constitutional issues may be ripe for decision. But presently plaintiff has not shown that it has suffered or will suffer any harm whatsoever. This Court finds as a fact that plaintiff will not suffer material or irreparable harm or loss if an injunction be not granted in this case. The key to this whole proceeding seems to lie within the language of Mr. Justice Frankfurter in his concurring opinion —Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, at page 154 (c), 71 S.Ct. 624, at page 639, 95 L.Ed. 817—"*Is the action challenged sufficiently final?*" The answer of this Court to the query just posed is in the negative. For instance, the ordinance under attack is a mere proposal. It may create or result in the construction of a CATV system within the Erie city limits. But to say that the city's proposal is at this point invalid is but to engage in surmise and conjecture only. The Federal Courts do not announce advisory opinions. The city's action is not yet final. Courts do not review constitutional issues until they have to. See Frankfurter, J., in *McGrath*, p. 155, 71 S.Ct. 624.

The Supreme Court in Parker v. Los Angeles County, 338 U.S. 327, 333, 70 Ct. 161, 163, 94 L.Ed. 144, said—

"The best teaching of this Court's experience admonishes us not to entertain constitutional questions in advance of the strictest necessity."

In this case, this Court sees no strict necessity for an injunction. It will be denied and the complaint dismissed.

This opinion embraces the findings of fact and conclusions of law as permitted under Rule 52.

ORDER

AND NOW, <u>July 28, 1967</u>, for the reasons mentioned in the foregoing opinion, plaintiff's prayer for an injunction is denied and the complaint is dismissed.