DEATH AND PERMANENT TOTAL DISABILITY TRUST FUND *v.* HEMPSTEAD COUNTY and Public Employee Claims Division

90-274                                    803 S.W.2d 527

Supreme Court of Arkansas
Opinion delivered February 4, 1991

*David L. Pake*, for appellant.

*Public Employee Claims Division*, by: *Michael E. Surguine*, for appellee.

DAVID NEWBERN, Justice. This is a workers' compensation case. We review an Arkansas Court of Appeals decision *Death and Permanent Total Disability Trust Fund v. Hempstead County*, 32 Ark. App. 36, 796 S.W.2d 351 (1990), interpreting Ark. Stat. Ann. § 81-1310(c)(2) (Repl. 1976) which applied to an injury which occurred in 1977. The statute is as follows:

> The first Fifty Thousand Dollars ($50,000) of weekly benefits for death or permanent total disability shall be paid by the employer or his insurance carrier in the manner provided in this Act [§§ 81-1301 - 81-1349]. An employee or dependent of an employee who receives a total of Fifty Thousand Dollars ($50,000) in weekly benefits shall be eligible to continue to draw benefits at the rates prescribed in this Act but all such benefits in excess of Fifty Thousand Dollars ($50,000) shall be payable from the Death and Permanent Total Disability Bank Fund.

Due to a hip injury, the appellee, Public Employee Claims Division, began paying Coy Hutson permanent total disability benefits of $84.00 per week. Hutson died of complications resulting from hip replacement surgery on November 14, 1981. The Public Employee Claims Division thereafter paid Hutson's widow $47.60 per week in widow's benefits. The Death and Permanent Total Disability Trust Fund contends its obligation does not commence until the employer or insurance carrier has paid $50,000 in weekly benefits to the widow. The Public Employee Claims Division contends that the Fund's obligation begins when a total of $50,000 in weekly benefits has been paid, including both the payments to the injured employee and those to the widow.

The Workers' Compensation Commission held that the Public Employees Claims Division could credit the weekly benefits paid to Hutson as well as the amount paid to his widow against the $50,000 maximum. The court of appeals affirmed, and so do we.

We agree with the Fund's contention, supported by its

citation of *Bolden* v. *Watt*, 290 Ark. 343, 719 S.W.2d 428 (1986), that a principal rule used to interpret statutory provisions is that we give the words their ordinary meaning and apply them just as written. That rule does not work, however, when there is ambiguity. The first sentence in the statute presents a little ambiguity. The problem is that it refers to $50,000 only once, and speaks of the "first" $50,000, but is uses the disjunctive "or" between "death" and "permanent total disability." If the general assembly intended that the employer be required to pay $50,000 in death benefits or $50,000 in permanent total disability benefits before the Fund would pick up the payments, a clearer statement would have been "The first Fifty Thousand Dollars of weekly benefits for death or the first Fifty Thousand Dollars of weekly benefits for permanent total disability shall be paid by the employer. . . ." As it is written, the sentence leaves some doubt.

The ambiguity is heightened when the second sentence is considered with the first. Again, the disjunctive "or" is used, this time between "employee" and "dependent," but the sentence concludes by again referring to only one $50,000, *i.e.*, "all such benefits in excess of Fifty Thousand Dollars ($50,000) shall be payable from the Death and Permanent Disability Bank Fund." The latter statement seems to say that the employer is responsible for a total of $50,000 whether it be paid to the employee, his widow or, as in this case, both.

When confronted with language which is ambiguous, we must attempt to ascertain the general assembly's intent. *Ragland* v. *Alpha Aviation, Inc.*, 285 Ark. 182, 686 S.W.2d 391 (1985). While it is true that the benefits to the employee and the benefits to his survivors are entirely different, originating in different portions of the workers' compensation laws, that fact is of no consequence in deciding the issue here. The question is the extent of the burden the employer must bear prior to the fund taking over.

We cannot think why the general assembly would require a greater expenditure in weekly benefits if an employee should die, for example, just before the employer paid the last weekly payment. There is no reason we can think of for making that employer pay out another $50,000 to the deceased employee's dependent before the fund is required to pay. We believe the

intent of the legislation was to create a maximum of $50,000 of weekly benefits against any employer of a worker who becomes permanently totally disabled as the result of a compensable injury. By stating that "all such benefits in excess of Fifty Thousand Dollars ($50,000) shall be payable" by the Fund, both permanent total disability and dependents' benefits resulting from the workers death are included, and employers of employees who become totally disabled as the result of a compensable injury will have the same maximum liability for weekly payments.

Presumably, the reason for the limit on an employer's liability is to keep workers' compensation from being too burdensome on the employers who, through insurance or self-insurance reserves, must pay for it. The fund will undoubtedly have to pay different amounts in various cases where the maximum has been reached, but that would be true regardless of the maximum placed on the employers' responsibility.

In addition to our conclusion concerning the intent of the general assembly, we find the result we reach here to be compatible with that we reached in *Hill* v. *CGR Medical Corp.*, 282 Ark. 35, 665 S.W.2d 274 (1984). There the issue was whether an employer had to pay each dependent of a deceased permanently totally disabled worker before the fund was required to pay. Our opinion included the following:

> The language and intent of the statute are apparent. Had the General Assembly intended that each dependent must draw $50,000 in the weekly funds before becoming eligible to draw from the bank fund the act would have so stated and would not have provided that the employer or its carrier pay the *first* $50,000 and would not have provided that *all benefits* in excess of $50,000 are payable from the bank fund. (Emphasis in original.)

While the issue there was different, as the court was not concerned with the conjunctive "or," the underlying rationale is one of those we apply here. Had the general assembly intended the employer to be liable for more than $50,000, it would have said so much more clearly.

Affirmed.