The Honorable Becky Lynn State Representative P.O. Box 450 Heber Springs, Arkansas 72543
Dear Representative Lynn:
This is in response to your request for an opinion regarding Act 1025 of 1995. You have presented the following specific question:
 Cleburne County uses a paper recording system, a microfilm system, and a computer index system. Does Act 1025 of 1995 prohibit the Clerk from accepting marginal releases after December 31, 1995?
Act 1025 of 1995 prohibits the use of marginal notations "in counties which use other than paper recording systems."
Your question has brought to light an ambiguity in the language of Act 1025. A statute is "ambiguous" if its language is susceptible of two or more different interpretations. Russellville Canning Co. v. American CanCo., 87 F. Supp. 484 (1950), rev'd on other grounds, 191 F.2d 38. What is unclear about Act 1025 is whether the legislature intended to eliminate the use of marginal notations only in counties that use a non-paper recording system exclusively, or also in counties that use non-paper recording systems in addition to a paper recording system. Because of this ambiguity, it is necessary to resort to the rules of statutory construction as set forth in Arkansas case law to determine the legislature's intent. Death and Permanent Disability Trust Fund v.Hempstead County, 304 Ark. 438, 803 S.W.2d 527 (1991). The Arkansas Supreme Court has held that in determining legislative intent, it is permissible to consider not only the act's language, but also the subject matter, the object to be accomplished, the purpose to be served, and other appropriate matters that throw light on the issue. City of FortSmith v. Tate, 311 Ark. 405, 844 S.W.2d 356 (1993). In addition, it is permissible to consider the act's title in determining legislative intent. Routh Wrecker Service v. Wins, 312 Ark. 123, 847 S.W.2d 707
(1993).
The title of Act 1025 of 1995,[1] when read in conjunction with both the amending language and the previously existing language of the statute (which provides for either the filing of an instrument or the use of a marginal notation as evidence of an interest in property), indicates that the purpose of the act was to do away with the use of marginal notations as evidence of an interest in real property, and to replace such notations with the filing of an actual instrument as evidence of that interest. This purpose is, of course, not as great a concern in a paper recording system, which already maintains a copy of the actual instrument creating the original interest in the property in question. However, it is a concern, by contrast, in a non-paper recording system, which maintains only recordations making reference to the instrument creating the interest. In these non-paper systems, the evidence of the interest in the property is already further removed from primary proof than in the paper system. Therefore, a marginal notation in a non-paper recording system would be even further removed from the original instrument, and therefore somewhat less trustworthy.
Considering Act 1025 in light of such matters as these, it would appear that the goal of the act was to eliminate the use of marginal notations in counties that maintain only secondary evidence of the instrument creating an interest in property. It would therefore appear that the legislature intended to allow continued use of marginal notations in counties that maintain primary evidence of property interests — i.e., any county that uses a paper recording system. Such an intent would include counties that happen to use non-paper systems as well (particularly where the non-paper systems are used only as "back-ups" to the paper system), because the purpose of the act (i.e., to assure the maintenance of primary proof of interest in property) would be served by those counties' paper systems.
I therefore conclude that the legislature did not intend to prohibit the use of marginal notations in counties that use non-paper recording systems in addition to a paper recording system, but rather that it intended to eliminate such notations only in counties that use a non-paper system exclusively. Accordingly, it is my opinion that the Clerk of Cleburne County may continue to accept marginal notations after December 31, 1995.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Suzanne Antley.
Sincerely,
WINSTON BRYANT Attorney General
WB:SA/cyh
[1] The title of Act 1025 of 1995 states: "An Act to Amend the Arkansas Code to Eliminate Marginal Notations as a Method of Evidencing the Existence of an Interest In Real Property; and for Other Purposes".