PARAGOULD CABLEVISION, INC. *v.* CITY OF PARAGOULD, Arkansas; and Pargould Light and Water Commission

90-153                                            809 S.W.2d 688

Supreme Court of Arkansas
Opinion delivered May 13, 1991

*Hilburn, Calhoun, Harper, Pruniski & Coleman, Ltd.*, by: *James M. McHaney, Jr.*; and Of Counsel: *David R. Goodson*, and *Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C.*, by: *Bruce M. Sokler*, for appellant.

*Branch, Thompson & Philhours, A Professional Association*, by: *Robert F. Thompson*, for appellee City of Paragould.

*W. Randolph Young*; and *Goodwin, Hamilton, Moore & Colbert*, for appellee Paragould Light and Water Comm'n.

MORTON GITELMAN, Special Justice. This is an appeal from the Greene County Chancery Court which entered a summary judgment dismissing the complaint of appellant, Paragould Cablevision, Inc. (Cablevision). Cablevision is the holder of a non-exclusive franchise to operate a cable television system in the appellee City of Paragould, Arkansas (City). The company has operated its system since 1963 and it has approximately 6,000

subscribers. The current franchise expires December 9, 1993.

Sometime after the 1983 renewal of Cablevision's franchise, citizens in Paragould expressed dissatisfaction with its services and rates. The City employed consultants to study the feasibility of initiating a city-owned cable television system, and in June 1986, the voters authorized the City to acquire and operate a system. Subsequently, the City enacted a resolution whereby the appellee Paragould Light and Water Commission (Commission) was charged with the duty of acquiring and operating a cable television system and, after a municipal election on October 31, 1989, the City undertook to issue Capital Improvement Bonds under Act 871 of 1985 in the amount of $3.22 million to finance the cost of the system.

On January 18, 1990, Cablevision filed a complaint in this case seeking an injunction against the issuance of the bonds and a declaration that the Commission had no power to acquire and operate a cable television system. Cablevision's complaint is based upon the claims that the Commission has no power to operate a cable television system under the state legislation authorizing its existence and that a delegation of such power to the Commission by the City is ultra vires; also, the arrangement contemplated by the City and the Commission constitutes an illegal exaction under Ark. Const. art. 16, § 13.

After a hearing, the chancellor found that the City has authority under Act 328 of 1987 to construct and operate a cable television system and, under Acts 871 of 1985 and 26 of 1988, it has the authority to issue bonds to finance construction of the system; the chancellor also found that the City can legally and properly delegate authority to the Commission to construct and operate the system and that such delegation is not a prohibited delegation of legislative authority but, rather, is a delegation of administrative and ministerial functions. Thus, as the chancellor further found, there is no illegal exaction prohibited by the Arkansas Constitution. We affirm.

## I. Issues on Appeal

Cablevision concedes, as it must, that Arkansas cities have the authority to own and operate cable television systems. Act 328 of 1987; Ark. Code Ann. § 14-199-601(a) (Supp. 1989)

provides:

> Any first-class city, second-class city, and incorporated town may own, construct, acquire, purchase, maintain, and operate a television signal distribution system for the purpose of receiving, transmitting, and distributing television impulses and television energy, including audio signals and transient visual images, to the inhabitants of the city or town and to the inhabitants of an area not to exceed two (2) miles outside the boundaries of the city or town.

Cablevision also does not contest the authority of cities to issue bonds for the purpose of financing a cable television system.

Although at one time the power of municipal corporations to engage in entrepreneurial activities was subject to serious question, *see* 12 E. McQuillin, *Municipal Corporations* §36.02 (3d rev. ed. 1986), the peculiar nature of cable television renders it distinct from municipal hotels, brickyards, tanneries, taxi companies, and the like. The furnishing of news, information, and entertainment to the public is an activity that is clearly tinged with a public interest, and cable television systems are clearly subject to governmental regulation.

Prior to federal regulation of cable communications, courts were sometimes called upon to sort out the legal issues involved in what were called "Community Antenna Television" (CATV) enterprises. In the absence of statutory guidance, courts resorted to basic principles of property law and the law of unfair competition. *See, e.g., Intermountain Electronics, Inc.* v. *Tintic School Dist.*, 377 P.2d 783 (Utah 1963); *Cable Vision, Inc.* v. *KUTV, Inc.*, 211 F.Supp. 47 (D.Idaho 1962), *vacated*, 335 F.2d 348 (9th Cir. 1964); *Dispatch, Inc.* v. *City of Erie*, 249 F.Supp. 267 (W.D. Penn. 1965); *Lamb Enterprises, Inc.* v. *City of Erie*, 286 F.Supp. 865 (W.D. Penn. 1967), *aff'd*, 396 F.2d 752 (3d Cir. 1967); *United Artists Television, Inc.* v. *Fortnightly Corp.*, 377 F.2d 872 (2d Cir. 1967); *Buckeye Cablevision, Inc.* v. *F.C.C.*, 387 F.2d 220 (D.C. Cir. 1967); *Black Hills Video Corp.* v. *F.C.C.*, 399 F.2d 65 (8th Cir. 1968).

In more recent times, federal regulation has been the prominent focus in analyzing the legal framework of the cable television industry. The Cable Act of 1984, 47 U.S.C. § 521 to

559 establishes national policy in this area. *See* Reyerson & Sinel, Regulating Cable Television in the 1990's, 17 Stetson L. Rev. 607 (1988). The Cable Act specifically provides that cable systems are not common carriers or public utilities, section 541(c). Furthermore, the act does not prohibit municipal ownership of cable systems or franchises, section 522(4), nor does it require that franchises be exclusive, section 541(a)(1). Thus, the federal legislation has no preemptive effect in the case before us.

## II. Status of the Commission

Cablevision's key argument is that, although the City is authorized to acquire and operate a cable television system in competition with the existing private system, the City has no power to delegate such authority to the Commission, and the Commission has no authority to accept such delegation. Cablevision argues that the Commission is a creature of statute and has only those powers expressly granted by the enabling act. This argument requires us to consider the status of the Commission.

In 1933, the City issued bonds and constructed a municipal electric light plant which was completed in 1939. In 1941, the City, by ordinance, created a commission to control and operate the municipal plant. This ordinance refers to, and is based upon, Act 70 of 1941. Act 70 authorized municipal corporations "owning, operating and controlling municipally-owned light and power plants" to create a five-member board for "the purpose of directing, controlling and operating such municipal light and power plants within such city. . . ." The act goes on to prescribe the method of selection of such board members and the power of the board to control and operate the plant and dispose of surplus property, but states that the board "shall not sell or rent the right to own, use and operate the equipment of such light and power plant." Section 1 of Act 70 states that it applies to cities having a population (under the 1940 census) of not less than 7,070 or more than 7,085. Act 70 was never judicially challenged, but it could be viewed as an example of the type of local or special legislation prohibited by Amendment 14 to the Arkansas Constitution. *See* Anderson, *Special and Local Acts in Arkansas*, 3 Ark. L. Rev. 113 (1948).

In 1953, the General Assembly passed Act 562, which

rectified the questionable validity of Act 70. Act 562 permits cities of the first class "whose municipally owned water, sewer and/or light plants are not now being operated by a commission or commissions created by or pursuant to valid special or local acts of the Arkansas Legislature," to create such commissions. In all material respects, the powers of such commissions are the same as the powers of the board created under the authority of Act 70. The City promptly passed an ordinance re-establishing its power commission under Act 562, designating it as the Light Plant Commission of the City of Paragould. In 1984, by ordinances, the City vested control of the water and sewer system in the Commission and changed its name to Paragould Light and Water Commission.

Cablevision claims that the Commission is a separate and distinct entity from the City, having its origin in Act 562 of 1953, and is in no way an arm of the City or its alter ego. Because Act 562 does not grant power to such commissions to operate anything but electric plants, waterworks, and sewer plants, Cablevision argues that operation of a cable television system by the Commission would be ultra vires.

The City contends that the Commission is an agency of the City and is the most efficient department of city government to operate a cable system. The Commission owns vehicles and, more importantly, light poles, which are the means of conveying television signals from the central receiving equipment to the homes of subscribers. Also, the Commission has personnel, equipment, and expertise for the billing of consumers and collection of accounts.

At trial, Cablevision introduced no independent evidence to prove that the Commission is a distinct entity from the City. Instead, Cablevision relied on the four corners of Act 562 to prove that the only powers of a commission created under that act exclude operation of a cable system. In the absence of a record demonstrating that the actual authority and operation of the Commission is independent of the City, we are left with the task of interpreting the legislative intent underlying Act 562. In doing so, we are struck with the many indications within the act itself that the legislature did not intend to create entities separate and apart from the cities with municipally owned light, water and sewer

plants. Section 1 of Act 562 provides: "Hereafter a city of the first class *may*, by the enactment of an ordinance or ordinances, create a commission or commissions to operate, control and supervise such of its municipally owned water, sewer and/or light plants *as may be prescribed* by an ordinance or ordinances. . . ." (Emphasis added). Such language hardly supports the argument that the Commission is unable to accept any additional duties prescribed by the city council, such as operation of a city-owned cable system. Further, Section 6 of Act 562 provides:

> Said board or boards created pursuant to the provisions of this act shall have full power to operate and control the plant or plants entrusted to its direction. . .and, *subject to such restrictions as may be prescribed in the ordinance* creating said board or boards shall have full power to buy and pay for out of the earnings or revenue of said plants for the welfare and benefit of the citizens and inhabitants of the Municipal Corporation. . . (emphasis added).

Section 9 of Act 562 states that the "board shall make due report to the City Council with reference to the conditions and affairs of the Municipal Plants under its control at such time and in such manner as the City Council may designate." Finally, Section 12 of Act 562 states: "Nothing contained in this act shall be construed to prohibit the City Council of any city subject to the terms of this act from repealing or amending any act which it may have passed pursuant to the authority hereby conferred." All of the terms of Act 562 cited, when considered with the history of legislative regulation of municipally owned utilities, inescapably point to the conclusion that the powers and limitations of Act 562 are directed to cities and not to the entities allegedly created by the act.

Crucial to Cablevision's argument is the characterization of the Commission as a distinct entity, a "utility commission" with limited powers. Cablevision relies on *Portis* v. *Board of Public Utilities, Lepanto*, 213 Ark. 201, 209 S.W.2d 864 (1948). The issue in that case was whether the Town of Lepanto, which owned its waterworks and sewer plant, had the power to issue revenue bonds to expand the plant or whether the Board of Public Utilities, created under Act 95 of 1939, had the power to issue such bonds. We held that the power to issue the bonds was in the

town and that Act 95 did not expressly grant such power to the board. This case does not support Cablevision's theory.

First, the exact holding of *Portis* is that the legislature did not take away, in Act 95, the power of the town to issue revenue bonds; we said:

> Clearly we think it was the intention of the Legislature under Act 95 that Cities or Towns should still have the sole right to issue bonds. . .and realizing that municipalities would need the revenues from these plants to secure any bonds that might be issued by the municipalities, themselves, and for other purposes, the Legislature intended that the sole power to issue such revenue bonds should rest with the municipality.

213 Ark. at 207, 209 S.W.2d at 867.

Second, although we cited and discussed the famous "Dillon Rule" in the *Portis* case—that municipal corporations have only those powers expressly granted by statute, or those necessarily implied, or essential—we do not find that the Public Utilities Board of Lepanto was a comparable entity to the Paragould Light and Water Commission. Cablevision relies on language in *Portis* where we stated:

> In short, we hold that Act 95, supra, did not confer upon the Board of Utilities here the power to issue revenue bonds; that, being a creature of the statute, the Board had only such powers as were expressly, or impliedly given to it by the Legislature, and that it was the clear intent of the lawmakers that only one municipal authority, the municipality itself, should have the power to issue these revenue bonds.

213 Ark. at 208, 209 S.W.2d at 868. This language does not aid Cablevision's case. In *Portis*, we were dealing with Act 95 of 1939. That legislation was clearly designed to allow transfer to a new entity the operation and management of utility plants which had been constructed by improvement districts and which had paid up the bond issues used to construct the plants.

In the 1930's, many smaller communities in Arkansas undertook construction of electric light plants. In the absence of

private utility companies ready and willing to undertake such construction, many of the communities utilized the statutory authority to create improvement districts for the purpose of issuing bonds and constructing the system. The improvement district, once created, would issue bonds, to be retired either by revenues generated by the system or by tax assessments on real property within the district. Improvement districts have always been considered distinct municipal corporations which are creatures of the state. 1 E. McQuillin, *Municipal Corporations* § 2.03(a) (3d rev. ed. 1986); *Fitzgerald* v. *Walker*, 55 Ark. 148 (1891); *Gladson* v. *Wilson*, 196 Ark. 996, 120 S.W.2d 732 (1938).

The *Portis* case is bottomed on the fact that the Board of Utilities was a successor to the improvement district which had built the Lepanto plant. The Commission in this case, on the other hand, was created by the act of the City under permissive legislation, Act 562 of 1953, which states: "Hereafter a city of the first class may, by the enactment of an ordinance or ordinances, create a commission or commissions to operate, control and supervise. . .municipally owned water, sewer and/or light plants. . ." Unlike the Board of Utilities in the *Portis* case, the Commission here is not a successor to a municipal corporation and owes its existence to an ordinance enacted by the City.

Appellees argue that the "Dillon Rule" was "repealed" in Arkansas by Act 266 of 1971, codified at Ark. Code Ann. § 14-43-602 (1987), and popularly known as the "Home Rule Act." That statute can best be characterized as a limited home rule statute. True home rule for municipal corporations is found in state constitutions, because home rule for cities is simultaneously a grant of legislative power to home rule cities and a limitation of state legislative power. The limited home rule expressed in Act 266 does not settle issues relating to ultra vires actions by municipal corporations. However, we need not decide the current status of the "Dillon Rule" in Arkansas in this case because we find that the Commission is not a distinct legal entity apart from the City for the purpose of operating a cable television system.

Consistent with this conclusion, in *Adams* v. *Bryant*, 236 Ark. 859, 370 S.W.2d 432 (1963) we held that a commission created by ordinance of the City of Clarksville to operate the

municipal power, water, and sewer plant was an agent of the city and not a distinct municipal corporation. Although the Clarksville plant was originally built by an improvement district, we held that the city was not bound to follow Act 95 of 1939 to create a Public Utilities Board and could delegate the operation of the utilities to its own agency, consisting of three appointed commissioners (as opposed to five elected commissioners as specified in Act 95). Furthermore, the plaintiffs in *Adams*, were seeking an injunction to prevent the utility commissioners from engaging in activities far removed from operating the utilities, viz., purchasing stock in a proposed industrial park and contributing to a fund to promote the dairy industry. The injunctive relief was denied, suggesting that a city can delegate to its "utility commission" duties in addition to those associated with the operation of the utility plants. In the case before us, it would make little sense to say that the City has the express legislative power to own and operate a cable television system, but cannot delegate operation of the system to a commission created by a city ordinance under the permissive authority of a state statute.

## III. Delegation of Powers

The *Adams* case also answers Cablevision's argument that the Paragould ordinances and franchise agreement with the Commission constitute an improper delegation of legislative power. We recognize the general rule that the legislative powers of a municipal corporation cannot be delegated. 2 E. McQuillin, *Municipal Corporations* § 10.40 (3d rev. ed. 1986); *City of Harrison* v. *Snyder*, 217 Ark. 528, 231 S.W.2d 95 (1950); *Czech* v. *Baer*, 283 Ark. 457, 677 S.W.2d 833 (1984). The questions here, however, are whether the Commission is a part of the City or a separate entity and whether the powers allegedly delegated are legislative or ministerial or administrative. The first question has been discussed in the previous part of this opinion, where we concluded that the Commission was created under permissive legislation and is not a separate municipal corporation.

In answering the second question, we find several indications that the powers to be exercised by the Commission are not legislative powers, but rather administrative or ministerial powers. Immediately after the initial filing of this lawsuit, the Paragould City Council adopted Resolution 89-1, declaring:

> Whereas, in order to make more clear the intentions of the parties that the franchise agreement dated January 15, 1989, grant to the Commission only administrative or ministerial duties but reserve to the city council all legislative powers; now therefore, the City and the Commission do hereby amend the cable franchise agreement. . .as follows. . . .

The resolution then amends the franchise agreement in several respects and adds a new section:

> Nothing in this agreement shall be construed to grant to the Grantee any legislative authority, it being the intention of Grantor to grant to the Grantee administrative and ministerial duties associated with the construction and operation of a cable television system by Grantee but reserving to the city council all legislative power.

■ Prior to the resolution, the franchise agreement entered into by the City and the Commission was almost exactly like the Cablevision franchise agreement. We do not understand Cablevision to be arguing that it, a private corporation, had been delegated legislative powers in its franchise. Thus, any powers the Commission has by virtue of the franchise agreement cannot be characterized as legislative.

Other indications that the relationship between the City and the Commission does not involve unlawful delegation of legislative powers are: (1) the bonds issued to finance the construction of the system are in the name of the city, (2) the city controls the rates charged to the subscribers, and (3) a citizen's advisory committee selects the programming to be offered. The reasons for initially entrusting management of the municipally owned cable system to the Commission do not reflect even a hint of delegation of legislative powers. The Commission is the natural agency to administer the system as it has the personnel, vehicles, rights of way, and light poles that are necessary for operation of a cable television distribution system. Furthermore, under the federal Cable Act of 1984, a city must award a franchise to operate the cable system. Cablevision argues that the franchise method of regulation is proof that the Commission is a separate entity from the City. In actuality, the Commission is the best possible operator of the Paragould system because, even though Act 562

of 1953 is permissive, as we held above, the Commissioners are elected and thus, for First Amendment purposes, the City Council is not controlling access to cable channels or exercising editorial control. The Cable Act of 1984 simply requires that government not have editorial control over the cable channels. 47 U.S.C. § 533(e)(2) (Supp. 1990).

Because we find that the Commission is an agency of the City and because the City has clearly retained all legislative power in connection with operation of the city-owned cable system, Cablevision has not shown any constitutional or statutory violation, and the actions of the City do not constitute an illegal exaction.

Affirmed.

HOLT, C.J., and NEWBERN, J., dissent.

CORBIN, J., not participating.

DAVID NEWBERN, Justice, dissenting. Section 1 of Act 562 of 1953, codified as Ark. Code Ann. § 14-201-203(a) (1987), contains this language:

> A city of the first class may, by ordinance, create a commission or commissions to operate, control, and supervise such of its municipally owned water, sewer, or light plants as may be prescribed by ordinance which are not now being operated by a commission created by or pursuant to valid special or local acts of the General Assembly.

The question in this case is nothing more than whether a commission created pursuant to this statute may operate a cable television facility. If I properly understand the Court's opinion the holding is that operation of the cable system by such a commission is permitted because it would be practical to do so and because the Paragould Light and Water Commission is a creature of city ordinance under the authority of this "permissive" statute. While I agree the statute is permissive, I cannot read it as permitting the Commission to operate anything other than "water, sewer, or light plants."

It would perhaps be a very good thing if there were a way we could insert "cable television authority" in the series of items a light and water commission created under Act 562 is allowed by

law to control, but nothing in the Court's opinion shows how we can do that. Our first duty is to apply the statute just as it reads, giving the words their ordinary meaning. *Kansas City Southern Railway Co.* v. *Pleger*, 301 Ark. 564, 785 S.W.2d 462 (1990); *Jones* v. *Davis*, 300 Ark. 130, 777 S.W.2d 582 (1989). While we may have the luxury of interpretation when the language of a statute is ambiguous, *Dooley* v. *Hot Springs Family YMCA*, 301 Ark. 23, 781 S.W.2d 457 (1989); *Death & Permanent Total Disability Trust Fund* v. *Hempstead County*, 304 Ark. 438, 803 S.W.2d 527 (1991), that is hardly the case in this instance.

I respectfully dissent.

HOLT, C.J., joins in this dissent.