Mary Francis MASTERSON, Administratrix of the Estate of
Archie M. Masterson, Jr., Deceased, et al.
*v.* David M. STAMBUCK, Jr., et al.

94-1326 902 S.W.2d 803

Supreme Court of Arkansas
Opinion delivered July 17, 1995
[Rehearing denied October 9, 1995.*]

*Brown, J., would grant. Roaf, J., not participating.

*Walker, Campbell, Ivory & Dunklin*, by: *Woodson D. Walker* and *Steven R. Walker; The McMath Law Firm, P.A.*, by: *Paul E. Harrison* and *James Bruce McMath*; and *Jones & Tiller Law Firm*, by: *Marquis E. Jones*, for appellants.

*Henry & Henry*, by: *Robert W. Henry*, for appellees.

JACK HOLT, JR., Chief Justice. This consolidated interlocutory appeal and cross-appeal involves claims for wrongful death arising out of a single incident. On June 6, 1990, Louis D. Macon, a City of Conway sanitation employee, was driving a garbage truck occupied by two other sanitation employees, Archie Masterson and Calvin H. McCray, on Blaney Hill Road, in Faulkner County, Arkansas, when a vehicle driven by separate defendant David M. Stambuck crossed the center line and struck the truck head on. The truck went off the road, striking a utility pole on the right-of-way which broke and fell on the cab of the truck. The pole was owned, installed, and maintained by appellee and cross-appellant Conway Corporation. Messrs. Masterson, Macon and McCray received fatal injuries as a result of the accident.

The Estates of Messrs. Macon, Masterson, and McCray brought separate suits for wrongful death, which included claims

against Conway Corporation on the grounds that it was negligent in maintaining its utility pole too close to the highway in violation of standards allegedly recommended by American Association of State Highway and Transportation officials. Conway Corporation responded by filing motions on the pleadings and motions to be dismissed as a party defendant claiming both governmental and charitable immunity. Thereafter, the Estate of Louis Macon amended its complaint, asserting an alternative argument that Conway Corporation had violated the Arkansas Civil Rights Act of 1993, codified at Ark. Code Ann. § 16-123-105(a) (Supp. 1993), by depriving Mr. Macon of his life, to which Conway Corporation responded by filing a separate motion to dismiss.

All three cases were consolidated and submitted on affidavits and other documentary evidence to the trial court, who ordered that Conway Corporation be dismissed as a party defendant on the grounds that it was an arm of the City of Conway and acted in a governmental capacity, and was therefore immune from tort liability. In doing so, the trial court made further findings that Conway Corporation was not immune from liability in tort as a qualified charitable corporation and that the Arkansas Civil Rights Act was inapplicable to the matters at hand.

The court designated its order as final and appealable pursuant to Ark. R. Civ. P. 54(b), specifically finding that the parties and the courts would be subjected to two lengthy jury trials should its order be reversed on appeal, which would cause great hardship in time and expense and thus a great injustice upon all parties concerned. The appellants filed separate notices of appeal and Conway Corporation filed a notice of cross-appeal; thereafter, this court granted Conway Corporation's motion to consolidate the cases for purposes of appeal.

The appellants' arguments are as follows: (1) that the trial court erred in granting Conway Corporation's motion to dismiss, as Conway Corporation is not entitled to governmental immunity under Ark. Code Ann. § 21-9-301 (1987) as an arm of the City of Conway; (2) that the trial court erred in granting Conway Corporation's motion to dismiss on the grounds that Conway Corporation has governmental immunity under Ark. Code Ann. § 21-9-301, as such an application of the statute violates Article 2, section 13 of the Arkansas Constitution, which pro-

vides that there should be no wrong without a remedy; (3) that governmental immunity contravenes the rights guaranteed by the Fifth Amendment to the United States Constitution; (4) that Conway Corporation waived its proported governmental immunity; and (5) that the trial court erred in dismissing the claim for relief against Conway Corporation based on Arkansas's Civil Rights Act of 1993. On cross-appeal, Conway Corporation asserts that the trial court erroneously ruled that it is not immune from liability for tort as a qualified charitable organization. We reverse the trial court's finding on the first issue, as the facts reflect that Conway Corporation is not entitled to governmental immunity under Ark. Code Ann. § 21-9-301 (1987), and affirm its ruling on cross-appeal that Conway Corporation is not entitled to charitable immunity. In so holding, it is unnecessary to address the remaining arguments of the parties.

### *I. Direct appeal — governmental immunity*

The Estates of Archie Masterson, Louis Macon, and Calvin McCray assert that the trial court erred in granting Conway Corporation's motion to be dismissed as a party defendant inasmuch as it was an arm of the City of Conway, and thus immune from liability for actions in tort pursuant to Ark. Code Ann. § 21-9-301 (1987). Before addressing the merits of this argument, we note that the trial court considered matters outside of the parties' complaints to reach its conclusions, and for this reason, we treat the trial court's ruling as the granting of summary judgment. If matters outside the pleadings are presented and not excluded by the court, the motion to dismiss will be treated as one for summary judgment. *Rankin* v. *Farmers Tractor & Equip. Co.*, 319 Ark. 26, 888 S.W.2d 657 (1994). *See also* Ark. R. Civ. P. 12(b) and (c).

We review motions for summary judgment as follows: (1) summary judgment is a remedy that should be granted only when it is clear that there is no genuine issue of material fact to be litigated; (2) the burden of proving that there is no genuine issue of material fact is upon the movant, and all proof submitted must be viewed in a light most favorable to the party resisting the motion; (3) any doubts and inferences must be resolved against the moving party; (4) the burden in a summary judgment proceeding is on the moving party and cannot be shifted

when there is no offer of proof on a controverted issue; and (5) when the movant makes a prima facie showing of entitlement, the respondent must meet proof with proof by showing genuine issue as to a material fact. *Brumley* v. *Naples*, 320 Ark. 310, 896 S.W.2d 860 (1995).

The question before us is whether the trial court properly granted Conway Corporation's motion to dismiss, which we treat as a motion to grant summary judgment, in favor of Conway Corporation on the grounds that it was entitled to immunity under Act 165 of 1969, codified at Ark. Code Ann. § 21-9-301 (1987). On cross-appeal, the issue presented to us is whether the trial court erred in ruling that Conway Corporation was not immune from liability for tort as a qualified charitable organization.

 Arkansas Code Annotated § 21-9-301 (1987) reads as follows:

> It is declared to be the public policy of the State of Arkansas that *all counties, municipal corporations, school districts, special improvement districts, and all other political subdivisions* of the state shall be immune from liability for damages. No tort action shall lie against any subdivision because of the acts of their agents and employees.

(Emphasis added.) In an answer to requests for admissions, Conway Corporation admitted that it is not a political subdivision, yet it maintains that it is entitled to governmental immunity under this statute on the basis that it is an "arm" of the City of Conway. Obviously, we find no language in this statute which provides that a municipal corporation may extend its tort immunity to its so-called "arm." The basic rule of statutory construction is to give effect to the intent of the legislature, and when a statute is clear, it is given its plain meaning; the legislative intent is gathered from the plain meaning of the language used. *Hercules, Inc.* v. *Pledger*, 319 Ark. 702, 894 S.W.2d 576 (1995), *citing Pugh* v. *St. Paul Fire & Marine Ins. Co.*, 317 Ark. 304, 877 S.W.2d 577 (1994). The statute provides for tort immunity for "all counties, municipal corporations, school districts, special improvement districts, and all other political subdivisions." Conway Corporation does not fall within any of these enumerated categories, nor does the statute provide immunity for "arms" of municipal corporations or the other named entities.

We disagree with Conway Corporation that we have previously resolved this issue in its favor in *Conway Corp. v. Construction Eng'rs, Inc.*, 300 Ark. 225, 782 S.W.2d 36 (1989). In fact, we specifically declined the invitation to decide whether Conway Corporation was entitled to governmental immunity under section 21-9-301, while holding that contracts let by Conway Corporation were exempt from requirements that public improvement contracts be awarded to the lowest bonded bidder pursuant to Ark. Code Ann. § 19-11-403 and 404 (1987). We stated, in dicta, as follows:

> Although the Conway Corporation is not, strictly in name, a utility commission, that is what it is; it performs the same duties as a commission in managing and operating a municipal waterworks.

300 Ark. at 230.

Following our comments in *Conway Corp. v. Construction Eng'rs, Inc., supra,* we recognize that Conway Corporation performs the same duties as a utility commission. Yet, when we look at the Corporation's articles of incorporation, we note that it was "organized for benevolent purposes and especially for the promotion of education and aiding educational institutions in the City of Conway," and that it was authorized to adopt laws and regulations for the corporation not inconsistent with its articles. Thereafter, the City of Conway granted Conway Corporation a franchise to operate an electrical plant facility within the City of Conway. By its own admission, Conway Corporation was created to operate Conway's electrical system for the stated purpose of providing financial assistance to Hendrix College, a college owned and operated by the United Methodist Church, and Central Baptist College, so that they would not leave the City. To this end, the Corporation issued $215,000 in bonds against its earnings, and distributed the proceeds as follows: (1) $150,000 to Hendrix College; (2) $43,000 to Central Baptist College; (3) $2000 to Arkansas State Teachers College; and (4) and (5) $10,000 each to Conway Public Schools and St. Joseph's Parochial School. Specifically, the $150,000 was given to Hendrix College to meet a contract made between the college and the Chamber of Commerce to cause the college to remain within the City, and the $43,000 was given to Central Baptist College to pay off that school's indebtedness.

According to the affidavit of William H. Hegeman, General Manager of Conway Corporation, the current lease and franchise to the corporation were adopted by the City of Conway in Ordinances 79-24 and 79-25, respectively, for a term beginning June 1, 1979, and ending May 31, 2009. The lease provides for an annual rental of $120,000 and requires the Corporation to maintain, free of charge, all street lights, the City Hall, and all other public buildings. It also requires that the Corporation provide an adequate supply of electric power to the city, and to expand the system as the City's needs increase. The franchise grants the Corporation the exclusive right to operate an electric system in the city.

Pursuant to City Ordinance 86-11, the Corporation now operates Conway's waterworks system and sanitary sewer or waste water disposal system, for which it is paid $8000 per year by the City, and $2500 per year, respectively. Also, the City has granted the Corporation, similar to the electric system, a franchise to operate a cable television system, for which the City is repaying the loan from the Corporation for its construction. In return, according to the affidavit of Mr. Hegeman, from 1987 to 1991, the Corporation made various contributions to education in Conway which included a $45,000 contribution to Central Baptist College to aid in its building program.

As an aside, we note that in 1945, the Internal Revenue Service declared that the Corporation was exempt from taxation "as an organization not organized for profit but operated for the promotion of social welfare." In 1965, the IRS clarified that the Corporation was exempt as "an integral part of an instrumentality of the State of Arkansas, specifically the municipality of Conway." The Corporation is also exempt from the payment of state income tax.

Be this as it may, we disagree that Conway Corporation is entitled to governmental immunity. Its articles of incorporation and the general manager's testimony reflect that the original purpose of the Corporation was to provide money to Hendrix College and Central Baptist College to keep these institutions from leaving the City of Conway.[1] Yet the present relationship between

---

[1]We do not address the subissue presented by the appellants as to whether providing such funds would be a permissible activity for the City under the Establishment Clause

the City of Conway and the Corporation as franchisor-franchisee rebuts the contention that the Corporation is entitled to immunity.

The dissent acknowledges that in *Conway Corporation* v. *Construction Engineers, Inc., supra,* we declined to reach the issue of whether the Corporation was exempt from liability under section 21-9-301, yet it takes solace in the language of emergency clause found in Act 165 of 1969, by noting that it was the General Assembly's intent to afford immunity to "municipalities and all units of local government." The dissent bolsters its position by making reference to the fact that in *Adams* v. *Bryant,* 236 Ark. 859, 370 S.W.2d 432 (1963), we stated that the Clarksville Light and Water Commission was an agent of the City, and that later, in *Paragould Cablevision, Inc.* v. *City of Paragould,* 305 Ark. 476, 809 S.W.2d 688 (1991), we held that the Paragould Light and Water Commission was an *agent* of the City, and was endowed with the authority to acquire and operate a cable television system. We further noted in *Adams* that the City had the power to operate and maintain certain utilities by statute (now codified as Ark. Code Ann. § 14-91-401 (1987)), and that the City could designate its agent to carry out executive and administrative functions with respect to these utilities. From a reading of the emergency clause and the reference to the respective Commissions as being "agents" in their respective cities, the dissent wrongly claims that the status of Conway Corporation is clear, and that it falls within the umbrella exemption from tort action set out in section 21-9-301.

The dissent overlooks that, unlike Conway Corporation, both agencies in *Adams* and *Paragould Cablevision* were creatures of statute. In *Adams,* Clarksville's Light and Water Commission was created pursuant to section 14-91-402, which gives cities the express statutory power to own and operate a public utility.

of the First Amendment, as the appellants have not provided us with sufficient evidence to show the extent to which these colleges are church related. As the United States Supreme Court stated in *Tilton* v. *Richardson,* 403 U.S. 672 (1971), formal denominational control over a liberal arts college does not render all aid to the institution a violation of the Establishment Clause. Moreover, the burden rests on appellants to show the extent to which Hendrix College and Central Baptist College are church related, and since they have failed to show more that a formalistic church relationship, we cannot base our holding on appellants' subissue. *Board of Education* v. *Allen,* 392 U.S. 236 (1968).

Similarly, in *Paragould Cablevision*, the Paragould Light and Water Commission was created pursuant to Act 70 of 1941, and later reestablished under Act 562 of 1953, codified at Ark. Code Ann. § 14-201-201 *et seq.* (1987). In sharp contrast, Conway Corporation was formed and incorporated as a not-for-profit corporation for benevolent purposes, and, particularly, to aid the educational institutions located in the City of Conway.

In the first place, the Corporation pays the City an annual $120,000 rental fee for the franchise. It is also evident, when examining the statutory requirements for the structure of a utility commission set forth in section § 14-201-105, that Conway Corporation does not satisfy these criteria. For example, the terms of the directors are not staggered for two years; new members are not required to be appointed by the mayor; and new directors may be approved by a simple majority of the city council rather than by the two-thirds majority required by the statute. *See* Ark. Code Ann. §§ 14-201-105(b), (d), (e), and (f).

Conway Corporation was not created pursuant to statute; in fact, it has operated and continues to operate outside of the statutory boundaries of a utility commission as permitted by our Code. More importantly, the statute itself does not provide immunity for "arms" of a city or municipal corporation. Thus, it cannot be said that the Conway Corporation is entitled to immunity under Act 165 of 1969. Under these circumstances, we hold that the trial court erred in granting summary judgment on the grounds that Conway Corporation had governmental immunity from actions in tort.

### VI. Cross-appeal — charitable immunity

On cross-appeal, Conway Corporation asserts that the trial court erroneously ruled that it is not immune from liability for tort as a qualified charitable organization. Although we have not abolished the doctrine of charitable immunity, we give the doctrine a very narrow construction. *See Williams* v. *Jefferson Hospital*, 246 Ark. 1231, 442 S.W.2d 243 (1969). While we have not previously announced particular guidelines for considering whether an organization is entitled to charitable immunity, and recognize that cases in this regard are limited in number, we find the following list of factors considered in *Davidson* v. *Colo-*

*nial Williamsburg Foundation*, 817 F. Supp. 611, 614 (E.D. Va. 1993), instructive and proper for adoption: (1) whether the organization's charter limits it to charitable or eleemosynary purposes; (2) whether the organization's charter contains a "not-for-profit" limitation; (3) whether the organization's goal is to break even; (4) whether the organization earned a profit; (5) whether any profit or surplus must be used for charitable or eleemosynary purposes; (6) whether the organization depends on contributions and donations for its existence; (7) whether the organization provides its services free of charge to those unable to pay; and (8) whether the directors and officers receive compensation.[2] In adopting this list of factors, we recognize, as did the Virginia district court in Davidson, that this list is "illustrative, not exhaustive, and no one factor is dispositive." *Id.*

■ Considering Conway Corporation in light of these factors, we agree with the trial court's ruling that the Corporation is not entitled to charitable immunity. Granted, it is true that the Corporation articulated a charitable purpose in its articles of incorporation, as it stated that it was formed to aid educational institutions in the City of Conway, for which it was granted an

---

[2]These factors are similar to those applied by the Arkansas Court of Appeals in determining whether a particular hospital is an institution maintained and wholly operated for charity:

> (1) Do the articles of incorporation provide that the purpose of the hospital is charitable in nature?
>
> (2) Is the corporation maintained for the private gain, profit or advantage of its organizers, officers or owners whether directly or indirectly?
>
> (3) Does the hospital have capital stock or does it have provisions for distributing dividends or making a profit?
>
> (4) Does the hospital derive its funds from public and private charity as well as those who are able to pay?
>
> (5) Do all "profits" go toward maintaining the hospital and extending and enlarging its charity?
>
> (6) Is the hospital open to all who are not pecuniarily able?
>
> (7) Are those patients who are unable to pay received into the hospital without charge, without discrimination on account of race, creed or color and are they given the same care as those who are able to pay?
>
> (8) Is the hospital exempt from the payment of both state and federal taxes?

*Marion Hospital Ass'n* v. *Lanphier*, 15 Ark. App. 14, 688 S.W.2d 322 (1985).

exemption from both federal and state income taxation. Yet when measured against the aforementioned factors, Conway Corporation simply cannot be characterized as "charitable."

First, while Conway Corporation was created for charitable purposes, its directors have the authority to amend its articles of incorporation. Granted, the Corporation has in fact aided the City's educational institutions in accordance with the terms of its articles of incorporation. However, it has purchased fire trucks and the land for a city park in contravention to the articles. Other expenditures of the Corporation not authorized in the articles have included funds to purchase lands on which the Conway Human Development Center is located. In this vein, we recognize and adopt the position taken by the Arkansas Court of Appeals that, unless an entity performs as its articles state, it will not be entitled to charitable immunity. *J.W. Resort, Inc.* v. *First American National Bank*, 3 Ark. App. 290, 625 S.W.2d 557 (1981).

Second, the articles of incorporation do not contain a "not-for-profit" limitation; rather, the articles state that any profits must pass directly to the City as a cost of operation. In looking to whether the Corporation earned a profit, Conway Corporation's financial records from 1987 to 1991 indicate that the percentage of revenues it donated was less than one half of one percent in two of those years, and never exceeded 2.65 percent during that time period. Moreover, the Corporation's average revenues for this time period was well over 20 million dollars per year, with net income for 1988 and 1989 being $1,885,358 and $1,759,780, respectively.

It is also significant that, when looking at the fifth factor as to whether the Corporation's profits must be used to charitable purposes, the articles of incorporation do not require that the City use the money for a benevolent purpose. We have considered this factor as probative in *Burgess* v. *Four States Memorial Hospital*, 250 Ark. 485, 465 S.W.2d 693 (1971), where we stated that an organization is entitled to charitable status if its receipts are held in trust for the furtherance of its charitable purposes.

While it is true that Conway Corporation's directors and

officers do not receive compensation, it appears that the Corporation depends on rates from customers for electric service, rather than contributions and donations, for its existence, and that it does not provide free service to customers who are unable to pay for electric and other services that the Corporation provides.

■ A simple overview reveals that Conway Corporation was formed to advance the economy of the City by keeping two parochial colleges within its limits. From there, it has grown into a commercial enterprise with a yearly net income near two million dollars, with omnibus "donations" to non-benevolent city concerns such as fire trucks, a city park, and the like. Under the totality of the relevant facts and circumstances, the trial court did not err in concluding that Conway Corporation was not entitled to charitable immunity.

Reversed and remanded on direct appeal; affirmed on cross-appeal.

BROWN, J., dissents.

ROAF, J., not participating.

ROBERT L. BROWN, Justice, dissenting. In 1969, in the aftermath of *Parrish* v. *Pitts*, 244 Ark. 1239, 429 S.W.2d 45 (1968), the General Assembly enacted Act 165 of 1969, now codified at Ark. Code Ann. § 21-9-301 (Supp. 1993). That Act was later amended by Act 542 of 1991 and Act 292 of 1993. It now reads:

> It is declared to be the public policy of the State of Arkansas that all counties, municipal corporations, school districts, special improvement districts, and all other political subdivisions of the state shall be immune from liability and from suit for damages, except to the extent that they may be covered by liability insurance. No tort action shall lie against any such political subdivision because of the acts of its *agents* and employees. (Emphasis added.)

The reasoning behind Act 165 was expressed in its Emergency Clause in 1969:

> SECTION 4. It is hereby found and determined by the General Assembly that because of the decision of the

Arkansas Supreme Court in Parish v. Pitts, 244 Ark. 1239, *municipalities* and all *units of local* government are in imminent danger of bankruptcy because of tort lawsuits and vital public services are in danger of being discontinued. Therefore, an emergency is hereby declared to exist and this Act being immediately necessary to protect the public peace, health and safety, shall take effect immediately on its passage and approval.

The pivotal question in the case at hand is whether the Conway Corporation, with the exclusive franchise to operate the City's electric system, was an agent of the municipal corporation so to be exempt from a tort action under § 21-9-301. I conclude, to the extent it operates as a utility commission, it is an agent of the City.

In a case decided by this court in 1989, we stated with regard to the same Conway Corporation:

Although the Conway Corporation is not, strictly in name, a utility commission, that is what it is; it performs the same duties as a commission in managing and operating a municipal waterworks. *See* Ark. Code Ann. § 14-234-306 (1987).

*Conway Corp.* v. *Construction Engineers, Inc.*, 300 Ark. 225, 230, 782 S.W.2d 36, 39 (1989). We declined in that case to reach the issue of whether it was exempt from liability under § 21-9-301.

In *Paragould Cablevision, Inc.* v. *City of Paragould*, 305 Ark. 476, 809 S.W.2d 688 (1991), we acknowledged that the Paragould Water and Light Commission which was endowed by the City of Paragould with the authority to acquire and operate a cable television system was an agent of the City. In an earlier case, *Adams* v. *Bryant*, 236 Ark. 859, 370 S.W.2d 432 (1963)), we stated that the City Light and Water Commission was an agent of the City of Clarksville. We noted that the City had the power to operate and maintain certain utilities by statute [now codified at Ark. Code Ann. § 14-91-402 (1987)] and that the City could designate its agent to carry out executive and administrative functions with respect to those utilities. Here, Conway Corporation is vested by the City of Conway with the authority to provide

electrical service to the residents of that City. Operating in that capacity, it is no less an agent of the City than the Paragould Water and Light Commission or the City Light and Water Corporation in Clarksville.

Act 165, as amended, is clear and the status of Conway Corporation is clear. As an agent of the City, I would hold that Conway Corporation falls under the umbrella exemption from tort action set out in § 21-9-301.

I respectfully dissent.