**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**

_____

No. 97-2901

_____

| | | |
|---|---|---|
| Clovis Jones, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| Conway County, Arkansas, and | * | |
| Morrilton Housing Authority, | * | |
| | * | |
| Defendants, and | * | |
| | * | |
| Conway County Election Commission; | * | Appeal from the United States |
| Jean Hervey, In Her Official Capacity | * | District Court for the Eastern |
| as a Conway County Election | * | District of Arkansas. |
| Commissioner; Randall Wolfe, In His | * | |
| Official Capacity as a Conway County | * | |
| Election Commissioner; and Robert | * | |
| Carruthers, In His Official Capacity as | * | |
| a Conway County Election | * | |
| Commissioner, | * | |
| | * | |
| Appellants, and | * | |
| | * | |
| City of Morrilton, Arkansas, | * | |
| | * | |
| Defendant. | * | |

_____

Submitted: March 12, 1998

Filed: May 1, 1998
_____

Before MORRIS SHEPPARD ARNOLD and FLOYD R. GIBSON,[1] Circuit Judges,
  and NANGLE,[2] District Judge.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

During the November, 1994, general election in Morrilton, Conway County, Arkansas, Clovis Jones, who is confined to a wheelchair, fell as he attempted to negotiate an improvised ramp that was set up to help handicapped voters enter a polling place. As a result of the fall, Mr. Jones sustained certain injuries that, he testified, required him to undergo extensive medical testing and treatment.

Mr. Jones brought suit in federal district court against the Conway County Election Commission, among others, asserting a number of federal civil rights violations and various pendent state tort law claims. Prior to trial (although after extensive pretrial activity), the district court[3] dismissed the federal civil rights claims

_____

[1]In conference, Judge Floyd R. Gibson expressed his desire to reverse the judgment of the district court in this case, but his temporary disability due to illness has prevented his further participation.

[2]The Honorable John F. Nangle, United States District Judge for the Eastern District of Missouri, sitting by designation.

[3]The Honorable Elsijane Trimble Roy, United States District Judge for the Eastern District of Arkansas.

but retained jurisdiction over the state claims. A jury returned verdicts against the commission and another defendant, the Morrilton Housing Authority. The judgment

against the housing authority in the amount of $18,000 has been paid in full; only the $42,000 judgment against the election commission remains unsatisfied. On appeal, the election commission makes three arguments. Finding none of them persuasive, we affirm.

## I.

The election commission maintains first that, as a political subdivision of the state, it is immune from tort liability under Ark. Code Ann. § 21-9-301. That statute extends political immunity to "all counties, municipal corporations, school districts, special improvement districts, and all other political subdivisions of the state." The election commission argues that it is a political subdivision, a term left undefined by the statute, because it was created by the state and carries out a public, state function. But this definition of political subdivision seems to us overbroad and does not distinguish, for example, a state agency or an "arm" of a county from a political subdivision of the state.

County election commissions are created by statute in Arkansas. Each county election commission is composed of the chairpersons of the county committee of the majority and minority parties and one additional member appointed by the State Board of Election Commissioners. *See* Ark. Code Ann. § 7-4-102(a)(1). The county election commissioners' duties include determining and providing the appropriate number of ballot boxes for voting precincts under their jurisdiction, appointing the requisite number of election officials for each precinct, and certifying to the county court the *per diem* of the election officials. *See* Ark. Code Ann. § 7-4-107(a), § 7-4-107(c). The election commissioners receive a stipend of no more than fifty dollars per public meeting when official business is conducted, *see* Ark. Code Ann. § 7-4-111(b), but it is not clear where this money comes from. Furthermore, although the county election commissioners may call upon the prosecuting attorney (a state employee) for advice or assistance in civil actions, and the prosecuting attorney is obliged to defend any civil lawsuits brought against the commission or its members, *see* Ark. Code Ann. § 7-4-

-4-

106, nowhere do the Arkansas statutes designate county election commissions as political subdivisions, and nowhere do they specify whether election commissioners are employees of the state or of the county.

While the statutes leave the term "political subdivision" undefined, and the statutes relevant to election commissions leave their character ambiguous, the statutes and the case law do provide clues to the term's definition and to the commissions' character, and they enable us to conclude that the Conway County Election Commission is not a political subdivision of the state of Arkansas. First of all, the commission is not in any way similar to the enumerated examples contained in the immunity statute, all of which are physical (geographic) divisions of the state. An election commission is an administrative body, affiliated with a political subdivision, perhaps (the relevant county), but it is not itself a physical division of the state. Furthermore, even if the election commission were an "arm" of the county (itself one of the bodies enumerated in the immunity statute), a matter which is by no means clear, the statute does not extend immunity to it. *See Masterson v. Stambuck*, 321 Ark. 391, 396, 902 S.W.2d 803, 807 (1995) ("[o]bviously, we find no language in this statute which provides that a municipal corporation [or any other enumerated entity] may extend its tort immunity to its so-called 'arm' "). Thus we conclude that the election commission is not entitled to political subdivision immunity.

II.

The election commission also argues that the trial court erred by allowing Mr. Jones to introduce his medical bills without first laying the proper foundation. We reject this contention.

Assuming, without deciding, that, as the election commission maintains, Arkansas law controls the admissibility of medical bills into evidence, Ark. Code Ann. § 16-46-107 contains the relevant legal principles. The commission's reliance on the Arkansas Supreme Court's decision in *Bell v. Stafford*, 284 Ark. 196, 680 S.W.2d 700

(1984), is misplaced because the statute was enacted in 1993, nine years after that case was decided, and thus it supersedes the Arkansas Supreme Court's holding. The statute provides that, in a civil trial, "the patient ... shall be a competent witness to identify doctor bills ... upon a showing by the witness that ... such expenses were incurred in connection with the treatment of the injury ... involved in the subject of litigation at trial." *See* Ark. Code Ann. § 16-46-107(a). The statute goes on to note that "it shall not be necessary for an expert witness to testify that the charges were reasonable and necessary." *See* Ark. Code Ann. § 16-46-107(b).

In laying the foundation for the admission of these medical bills into evidence, Mr. Jones testified at trial that, when he visited the various doctors and hospitals for treatment, he did so exclusively for the injuries "involved in the subject of litigation at trial." He testified that his chief complaint was the fall from the wheelchair, and that no procedures were performed on him that were not directly related to the injuries he sustained as the result of his fall. Furthermore, Mr. Jones read from medical records that indicated that he complained of and was being treated for injuries relating to a recent fall from a wheelchair.

The trial court was careful not to admit the medical bills into evidence until Mr. Jones laid the requisite foundation with his testimony. It was then within the jury's province to consider the question of how many, if any, of the proffered bills represented treatment for the alleged injuries. An element of Mr. Jones's case was, of course, proximate cause, and the trial court instructed the jury on that issue, as the trial court further instructed the jury to consider the reasonableness and necessity of any medical expenses incurred. Once Mr. Jones testified that the bills were in fact incurred, and that he believed that they were incurred as the result of his fall, the bills were properly before the jury for its consideration.

### III.

The election commission argues finally that the trial court erred in denying its motion for a directed verdict. The commission asserts that the evidence was insufficient to support the jury's conclusion that the alleged fall actually occurred. Having carefully reviewed the record, however, we find that there was sufficient evidence before the jury to support a finding that Mr. Jones did indeed fall from the ramp.

### IV.

For the reasons stated, we affirm the judgment of the trial court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.