The Honorable LeRoy Dangeau State Representative 1105 Killough Road North Wynne, AR 72396-2456
Dear Representative Dangeau:
I am writing in response to your request for my opinion on a question I will paraphrase as follows:
 Does the Woodruff County Nursing Home, a tax-exempt, 132-bed skilled nursing facility owned by Woodruff County and managed by a board of directors appointed by the county judge and approved by the quorum court, qualify for sovereign immunity?
The administrator of the nursing home has informed me that the facility was constructed in the mid-1960's and was financed by the issuance of county revenue bonds. She indicates that those bonds have long since been retired and that the facility currently operates without county financial support of any sort. Nursing home employees are reportedly hired by the board of directors and are not considered "county employees" eligible for public employee health insurance and workers' compensation coverage.[1]
In correspondence attached to your request, the administrator has further indicated that "[t]he liability insurance premiums are getting so expensive that we are no longer able to pay the premiums they are asking to continue our liability coverage."
RESPONSE
In my opinion, the answer to this question as phrased is "no," given that "sovereign immunity" applies only to the state, not to the state's political subdivisions and agents thereof. However, the nursing home may qualify for the statutory immunity that is afforded counties pursuant to A.C.A. § 21-9-301 or pursuant to the common-law protection of charitable immunity. Finally, any particular claim may be barred by the concept of qualified immunity, which applies under appropriate circumstances to bar federal constitutional claims against official state or local actors. Determining which, if any, of these varieties of immunity might apply will entail conducting a factual review of the sort that exceeds my authority to undertake as a basis for issuing an official opinion. However, I can and will set forth the tests a reviewing court would apply in determining whether to dismiss any given claim.
Counties are authorized to "acquire, own, construct, reconstruct, extend, equip, improve, maintain, operate, sell, lease, contract concerning, or otherwise deal in or dispose of any land, building, improvements, or facilities of any and every nature whatever that can be used for hospitals, nursing homes, rest homes, or related facilities. . . ." A.C.A. § 14-265-103.[2] A county is further authorized to issue revenue bonds or use other "available revenues" to finance the purchase and operation of the described properties, including a nursing home. A.C.A. § 14-265-104. As noted above, construction of the facility was apparently financed by the issuance of county revenue bonds pursuant to this authority.
In Ark. Op. Att'y Gen. No. 92-022, my immediate predecessor opined that a nursing home financed through revenue bonds is a "quasi-public" institution — a characterization with which I agree. However, the mere fact that the Woodruff County Nursing Home is a creature of county government serving a public purpose does not mean it qualifies for sovereign immunity. Sovereign immunity is a concept that applies only to state, not to local, government. As the Arkansas Supreme Court noted inParish v. Pitts, 244 Ark. 1239, 1250-51, 429 S.W.2d 45 (1968):
 Of sovereignty as a reason for holding political subdivisions immune to suit, it is generally agreed . . . that cities and other such entities are not the state, and it is only to the state that the high attribute of sovereign immunity should properly be attributed. . . . [P]olitical subdivisions are not in fact the sovereign state.
However, while counties do not enjoy the constitutional sovereign immunity guaranteed the state by Ark. Const. art. 5, § 22, they do and have always had a limited tort immunity whose range is currently defined as follows at A.C.A. § 21-9-301:
 It is declared to be the public policy of the State of Arkansas that all counties, municipal corporations, school districts, special improvement districts, and all other political subdivisions of the state and any of their boards, commissions, agencies, authorities, or other governing bodies shall be immune from liability and from suit for damages except to the extent that they may be covered by liability insurance. No tort action shall lie against any such political subdivision because of the acts of its agents and employees.[3]
In considering this statute, one of my predecessors offered the following historical summary:
 Arkansas Code Annotated 21-9-301 provides that all counties, municipal corporations, and all other political subdivisions of the state shall be immune from liability for damages. The General Assembly has provided that no tort action shall lie against any such political subdivision because of the acts of its agents and employees. It has been recognized that counties have always enjoyed tort immunity. Hardin v. City of Devalls Bluff, 256 Ark. 480, 508 S.W.2d 559 (1974). However, the effect of the above-cited statute was to restore tort immunity to cities as immunity had been abolished by the Arkansas Supreme Court in Parish v. Pitts, 244 Ark. 1239, 429 S.W.2d 45 (1969).
Ark. Op. Att'y Gen. No. 90-100.
With respect to the possible application of statutory immunity to the employees and agents of covered entities, I offered the following in Ark. Op. Att'y Gen. No. 99-080:
 [A]lthough A.C.A. § 21-9-301 speaks only in terms of the immunity of the political subdivision itself, the Arkansas Supreme Court has interpreted the statute as extending immunity to officers and employees of the political subdivisions as well when they negligently commit acts or omissions in their official capacities. See, e.g., Autry v. Lawrence, 286 Ark. 501, 696 S.W.2d 315 (1985) (stating that it was the intent of the General Assembly in enacting A.C.A. § 21-9-301 to grant immunity to municipal agents and employees for acts of negligence committed in their official capacities). Accordingly, a claimant may be able to sue city or county employees personally for intentional or malicious acts, or for negligent acts not committed in their official capacities. However, the claimant cannot sue the city, the county, or the agencies thereof for negligence, nor can the claimant sue a city or county employee for negligence that was committed in the employee's official capacity.
Accord Clayborn v. Bankers Standard Insurance Co., 348 Ark. 259, 270,72 S.W.3d 476 (2002); Wallace v. Bryant School District, 46 F. Supp. 2d 863
(E.D. Ark. 1999), aff'd sub nom Wallace v. Bryant, 208 F.3d 219 (8th
Cir. 2000); Davis v. Fulton County, 884 F. Supp. 1245 (E.D. Ark. 1995).
In terms of the statutory language of A.C.A. § 21-9-301, the pertinent question is whether a county-owned and operated nursing home qualifies as an "agency" of the county, thus triggering limited immunity from tort liability. Although I strongly suspect the answer to this general question is "yes," I cannot extrapolate to opine that the Woodruff County Nursing Home qualifies as such, since factual questions remain regarding whether the facility indeed is county-operated to an extent that might trigger the application of statutory immunity. In my opinion, the practical difficulties in undertaking such an inquiry are merely illustrated by the apparent confusion regarding whether the nursing home's employees qualify as "public" in the sense that would render them eligible to receive public health insurance and workers' compensation benefits.
Somewhat complicating matters is the supreme court's declaration that statutory governmental immunity cannot extend to an "arm" of a political subdivision but instead can apply only to the political subdivision itself. Masterson v. Stambuck, 321 Ark. 391, 396, 902 S.W.2d 803 (1995);accord Jones v. Conway County, Arkansas, 143 F.3d 417, 418-19 (8th
Cir. 1998). However, both of the recited cases were decided before the legislature amended A.C.A. § 21-9-301 by Act 984 of 1999, expanding the scope of statutory immunity to cover not only political subdivisions, but further "any of their boards, commissions, agencies, authorities, or other governing bodies." This intention is clearly reflected in Act 984's title: "AN ACT TO AMEND ARKANSAS CODE § 21-9-301 TO INCLUDE BOARDS, COMMISSIONS, AND OTHER ENTITIES OF LOCAL GOVERNMENT IN THE IMMUNITY FROM TORT LIABILITY; AND FOR OTHER PURPOSES." Compare Short v. WestarkCommunity College, 347 Ark. 497, 504, 65 S.W.3d 440 (2002) (in considering a sovereign-immunity defense, declaring that "[w]e must determine whether Westark is "an arm of the State" subject to the protections of sovereign immunity"). In light of this amendment, regardless of whether the Woodruff County Nursing Home and its governing board constitute an "arm" of the county, I believe they might well qualify for limited statutory immunity as a "board" and an "agency" within the scope of the amendment.
In considering whether the Woodruff County Nursing Home constitutes a sufficiently "public" entity to qualify for statutory immunity, a court might well be influenced by the fact that A.C.A. § 14-265-103 expressly authorizes the creation of county nursing homes. In Stambuck, the court remarked that a utility whose creation is expressly authorized by statute is an "agent" of the creating municipality, whereas a not-for-profit entity incorporated for benevolent purposes is not. 329 Ark. at 399-400. Although the issue is ultimately one of fact beyond my power or authority to resolve in an opinion, a court faced with the issue might well conclude that the facility qualifies as a "creature of statute" in the sense used in Stambuck, thus confirming that it qualifies as an "agency" in the sense used in A.C.A. § 21-9-301. See also White v. City ofNewport, 326 Ark. 667, 993 S.W.2d 800 (1996) (affirming trial court's application of immunity statute to a city-owned and operated ambulance service); Bigelow v. Union County, 287 Ark. 486, 701 S.W.2d 125 (1985) (affirming dismissal of claims against county-owned and operated medical center on grounds of statutory immunity). However, only a thorough review of the facts would support such a conclusion.
Although it would appear from your request that the Woodruff County Nursing Home has a distinctly public character, I should note that if a reviewing court were to find otherwise, thereby precluding the availability of statutory immunity, the facility might nevertheless qualify for charitable immunity under applicable law. In Stambuck, the court summarized as follows the standard for determining the availability of charitable immunity:
 While we have not previously announced particular guidelines for considering whether an organization is entitled to charitable immunity, and recognize that cases in this regard are limited in number, we find the following list of factors considered in Davidson v. Colonial Williamsburg Foundation, 817 F. Supp. 611, 614 (E.D. Va. 1993), instructive and proper for adoption: (1) whether the organization's charter limits it to charitable or eleemosynary purposes; (2) whether the organization's charter contains a "not-for-profit" limitation; (3) whether the organization's goal is to break even; (4) whether the organization earned a profit; (5) whether any profit or surplus must be used for charitable or eleemosynary purposes; (6) whether the organization depends on contributions and donations for its existence; (7) whether the organization provides its services free of charge to those unable to pay; and (8) whether the directors and officers receive compensation. In adopting this list of factors, we recognize, as did the Virginia district court in Davidson,
that this list is" illustrative, not exhaustive, and no one factor is dispositive." Id.
321 Ark. at 401 (footnote omitted). Needless to say, determining whether the facility might qualify for charitable immunity under this standard would entail conducting an intensive factual review of the sort I am neither qualified nor authorized to undertake. See the attached Ark. Op. Att'y Gen. No. 2001-332 (characterizing as factual questions whether the county-owned and operated Lawrence Memorial Hospital and Lawrence Hall Nursing Center qualify for charitable immunity).
Finally, I should note that anyone acting on behalf of the state or its political subdivisions enjoys a "qualified immunity" if charged with a violation of federal constitutional law. As I recently noted:
 Under the doctrine of qualified immunity, an individual is immune from trial if the actions complained of were taken in good faith in the performance of one's duties, and the acts do not violate any clearly established constitutional right. Saucier v. Katz, 533 U.S. 194
(2001); Harlow v. Fitzgerald, 457 U.S. 800 (1982). The test for the applicability of qualified immunity turns upon the "objective legal reasonableness of the action," assessed in light of legal rules that were "clearly established" at the time the action was taken. Id.; Anderson v. Creighton, 483 U.S. 635 (1987). The immunity is" qualified" because it does not obtain where the activity is in violation of clearly established law that a reasonable person would have known. Id.; Robinson v. Beaumont, 291 Ark. 477, 725 S.W.2d 839 (1987); Matthews v. Martin, 280 Ark. 345, 658 S.W.2d 374 (1983).
Ark. Op. Att'y Gen. No. 2002-040. Determining whether qualified immunity applies to bar any particular claim will likewise entail conducting a detailed inquiry into the facts.
Assistant Attorney General Jack Druff prepared the foregoing, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:JD/cyh
Enclosure
[1] Subsection 21-5-603(4) of the Arkansas Code, contained within the Public Employee Workers' Compensation Act, A.C.A. § 21-5-601 et seq.,
defines the term "county employees" as follows:
 Any officer or employee of the counties of this state, the employees of any board, commission, department, or institution owned, operated, managed, and administered by the counties, including employees of county-owned hospitals and nursing homes operated, managed, or administered by private management companies or enterprises under a management agreement under the terms of which the employees retain their employment status as county employees. However, employees of county-owned hospitals and nursing homes operated, managed, or administered by private management companies or enterprises under a lease agreement or under a contract of management in which the managing company uses its own personnel, shall not be provided state fund coverage for workers' compensation benefits under the provisions of this subchapter.
If, as the material you have supplied suggests, Woodruff County Nursing Home is indeed "owned and operated by Woodruff County," its employees would appear to qualify as "public" for workers' compensation purposes under this definition. I have not been asked and am not equipped to speculate why they might currently be otherwise designated.
[2] Although this does not appear to be an issue in the case of the Woodruff County Nursing Home, A.C.A. § 14-137-106 further authorizes a county to establish a nursing home under the supervision of a public facilities board.
[3] Notwithstanding the distinction between sovereign immunity and this statutory immunity, the court on at least one occasion has loosely and, I believe, inadvertently referred to statutory immunity as "sovereign immunity." Rudd v. Pulaski County Special School Dist., 341 Ark. 794,802, 20 S.W.3d 310 (2000). So, for that matter, has this office. Ark. Op. Att'y Gen. No. 87-289.