## Harvie ANGLIN *v.*
## JOHNSON REGIONAL MEDICAL CENTER

08-453                                                    289 S.W.3d 28

Supreme Court of Arkansas
Opinion delivered November 6, 2008

12

*Law Offices of Charles Karr, P.A.*, by: *Charles Karr*, for appellant.

*Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C.,* by: *Stuart P. Miller,* for appellee.

Jim Hannah, Chief Justice. Appellant Harvie Anglin appeals the order of the Johnson County Circuit Court granting summary judgment in favor of appellee Johnson Regional Medical Center (JRMC). On appeal, he asserts that the circuit court erred in determining that JRMC was entitled to charitable immunity and in determining that it was not necessary to address the issue of governmental immunity. Mr. Anglin also contends that the circuit court erred in concluding that his amended complaint could not relate back to the date of the original complaint pursuant to Rule 15(c) of the Arkansas Rules of Civil Procedure. Finally, Mr. Anglin contends that the circuit court erred in declaring that Rule 56 of the Arkansas Rules of Civil Procedure is constitutional. We affirm the circuit court.

Harvie and Margie Anglin filed a lawsuit on February 6, 2003, as husband and wife, against JRMC and AIG Insurance Company (AIG), based upon allegations of medical injuries sustained by Mrs. Anglin as a result of the alleged negligence of JRMC that occurred on January 24, 2003. Mrs. Anglin later died, and Mr. Anglin filed a motion to revive the original action after being appointed special administrator of his wife's estate. On April 14, 2003, the circuit court ordered the substitution of Mr. Anglin as the party of interest and granted the motion for revival. Mr. Anglin then pursued a wrongful death claim on behalf of his deceased wife. On April 22, 2003, Mr. Anglin nonsuited AIG, and an order dismissing AIG without prejudice was entered.

On December 5, 2003, Mr. Anglin filed a First Amended Complaint against JRMC and TIG Insurance Company (TIG). Mr. Anglin voluntarily nonsuited the action, dismissing it without prejudice, on August 1, 2005.[1] On August 1, 2006, Mr. Anglin filed a complaint based on the same allegations, but he named only JRMC as a defendant.

On November 19, 2007, JRMC filed a motion for summary judgment, contending that JRMC was entitled to both governmental and charitable immunity. In addition, JRMC asserted that Mr. Anglin's complaint, filed on August 1, 2006, in accordance

---

[1] While the order of dismissal does not specifically mention TIG, the order dismissed the entire action without prejudice, and there is nothing in the record indicating that TIG was dismissed prior to August 1, 2005.

with the savings statute, was a nullity because he failed to name the proper defendant, TIG, JRMC's liability insurer.

Mr. Anglin responded to the motion for summary judgment and asserted that Rule 56 was unconstitutional and that JRMC was not entitled to either governmental or charitable immunity. After a hearing on the motion, the circuit court entered an order granting JRMC's motion for summary judgment and dismissing with prejudice Mr. Anglin's complaint against JRMC. The circuit court concluded that JRMC was entitled to charitable immunity and that because Mr. Anglin did not sue the liability insurer directly, his complaint was a nullity. Further, the circuit court determined that Rule 56 was constitutional. Mr. Anglin now brings this appeal.

Mr. Anglin asserts that the circuit court erred in granting summary judgment on the basis that JRMC was entitled to charitable immunity. The law is well settled that summary judgment is to be granted by a circuit court only when it is clear that there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. *See Stromwall v. Van Hoose*, 371 Ark. 267, 265 S.W.3d 93 (2007). Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *See id.* On appellate review, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *See id.* We view the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *See id.* Our review focuses not only on the pleadings, but also on the affidavits and documents filed by the parties. *See id.*

"The essence of the [charitable-immunity] doctrine is that agencies, trusts, etc., created and maintained exclusively for charity may not have their assets diminished by execution in favor of one injured by acts of persons charged with duties under the agency or trust." *George v. Jefferson Hosp. Ass'n*, 337 Ark. 206, 211, 987 S.W.2d 710, 712 (1999) (citing *Crossett Health Ctr. v. Croswell*, 221 Ark. 874, 256 S.W.2d 548 (1953)). The doctrine favors charities and results in a limitation of potentially responsible persons whom an injured party may sue. *Id.* Therefore, we give the doctrine a very narrow construction. *Id.* (citing *Williams v. Jefferson Hosp. Ass'n*, 246 Ark. 1231, 442 S.W.2d 243 (1969)). To deter-

mine whether an organization is entitled to charitable immunity, courts consider the following factors:

> (1) whether the organization's charter limits it to charitable or eleemosynary purposes; (2) whether the organization's charter contains a "not-for-profit" limitation; (3) whether the organization's goal is to break even; (4) whether the organization earned a profit; (5) whether any profit or surplus must be used for charitable or eleemosynary purposes; (6) whether the organization depends on contributions and donations for its existence; (7) whether the organization provides its services free of charge to those unable to pay; and (8) whether the directors and officers receive compensation.

*Id.* at 212, 987 S.W.2d at 713. These factors are illustrative, not exhaustive, and no single factor is dispositive of charitable status. *Id.*

In support of its motion for summary judgment, JRMC presented the affidavit of its administrator, Larry Morse. Mr. Morse stated that JRMC treats patients and provides medical services free of charge, without regard for the patients' ability to pay. He also stated that JRMC's charter limits it to charitable purposes and establishes it as a not-for-profit entity. Mr. Morse further explained that JRMC is exempt from the payments of federal and state income taxes because it is a 501(c)(3) corporation existing, organized, and operated for charitable purposes. Mr. Morse also stated that JRMC derives its funds primarily from Medicare, Medicaid, and individual patients or their private insurers.

Mr. Morse stated that, as of September 30, 2007, JRMC had provided approximately $849,043 in free medical services for the year. He also stated that JRMC currently experiences an operating margin of (9.78%), indicating a loss from operations.

Along with Mr. Morse's affidavit, JRMC submitted its articles of incorporation, which state that JRMC shall provide health services on a charitable basis and not for profit, but that nothing shall be deemed to require JRMC to furnish services without charge to those able to pay the charges either directly or through third parties. In addition, the articles of incorporation state that no part of the net earnings of JRMC shall inure to the benefit of or be distributable to its members, trustees, officers, or other private persons, except that JRMC shall be authorized and empowered to pay reasonable compensation for services rendered.

In response to JRMC's pleadings accompanying the motion for summary judgment, Mr. Anglin presented the deposition of

Mr. Morse. Citing Mr. Morse's deposition, Mr. Anglin claims that JRMC is not entitled to charitable immunity because it is not maintained exclusively for charity. He states that JRMC is a "big business," and that, while the hospital did not make a profit in 2006, it made profits in excess of $1 million in years prior to 2006. Mr. Anglin also asserts that JRMC is not a charity because it sues patients to collect unpaid hospital bills. Finally, Mr. Anglin contends that, by virtue of the fact that JRMC carries liability insurance, it is a business and not a charity.

Of the eight factors listed in *George*, three are clearly established based upon evidence in the record. Those are: (1) whether the organization's charter limits it to charitable or eleemosynary purposes; (2) whether the organization's charter contains a "not-for-profit" limitation; and (7) whether the organization provides its services free of charge to those unable to pay. The first and second are demonstrated by JRMC's articles of incorporation, which state that the hospital provides health services on a charitable, not-for-profit basis. The seventh factor is established by Mr. Morse's affidavit, wherein he stated that the hospital provides health services free of charge to those who cannot pay. As noted, in the first nine months of 2007, JRMC provided $849,043 in free medical services.

As to the fourth factor, whether the organization earned a profit, the record shows that in some years, JRMC did earn a profit, and in others, it did not. Mr. Morse's affidavit established that JRMC is currently operating at a loss. JRMC satisfies the fifth factor, whether any profit or surplus must be used for charitable or eleemosynary purposes, because Mr. Morse stated any surplus shall be used to fund the hospital to fully perpetuate its charitable community benefit of providing medical assistance to the public.

As for the third factor, whether the hospital's goal is to break even, it appears from the record that JRMC's goal is to not operate at a loss and to use any surplus to fund improvements for the hospital. As for the sixth factor, whether the organization depends on contributions and donations for its existence, it does not appear that JRMC depends on these types of funding for its existence, as the hospital services are paid for by insurance companies, whether governmental or private. As for the eighth factor, whether the directors and officers receive compensation, the

articles of incorporation state that the directors and officers can receive reasonable compensation, but that they shall receive no part of the net earnings.

The circuit court found that Mr. Anglin's response to JRMC's motion for summary judgment did not refute JRMC's overwhelming evidence supporting its contention that JRMC meets the standard governing charitable immunity under Arkansas law. We agree.

■ Mr. Anglin appears to suggest that JRMC is not a charity hospital because it has in some years earned a profit. Indeed, it is evident that JRMC anticipated that it might make a profit, as demonstrated by Mr. Morse's statement that the hospital intended to use any surplus to perpetuate its purpose of providing healthcare for the benefit of the community. In *George*, we explained:

> [T]rying to break even is only one factor and certainly not a dispositive one when applied to a hospital. Modern hospitals are complex and expensive, technological, economic and medical enterprises that can ill afford to come short of even in their financial integrity. Running a small surplus should not be seen as totally incompatible with charitable status in such cases. . . . The existence of profit is not determinative of charitable status.

337 Ark. at 213, 987 S.W.2d at 713.

■ ■ Further, the fact that JRMC sued patients to collect unpaid medical bills is not determinative of its charitable status. Mr. Anglin failed to show that in filing suit to collect unpaid bills, JRMC was attempting to collect from patients unable to pay. This leaves only the evidence from JRMC that suit is instituted only against those able to pay but who refuse to do so. Based upon a review of the totality of the relevant facts and circumstances, we hold that the circuit court did not err in concluding that JRMC meets the requirements of a charitable entity for purposes of asserting the defense of the charitable–immunity doctrine. Because we affirm the circuit court's determination that JRMC is charitably immune from suit, we need not address Mr. Anglin's argument regarding governmental immunity.

Mr. Anglin asserts that even if JRMC is immune from tort liability, he may still sue JRMC's liability insurer. He contends that the circuit court erred in concluding that his first amended

complaint, which named TIG Insurance Company as a defendant, could not relate back to the date of the original complaint.[2] The record reveals that Mr. Anglin filed his complaint against JRMC on August 1, 2006, exactly one year after he had nonsuited his first amended complaint, which he had filed on December 5, 2003.[3] At the time Mr. Anglin refiled suit, on August 1, 2006, *Low v. Insurance Co. of North America*, 364 Ark. 427, 220 S.W.3d 670 (2005), was the law regarding the issue of charitable immunity, and the *Low* decision specifically required Mr. Anglin to file a direct cause of action against the insurer of an institution entitled to charitable immunity. Nevertheless, Mr. Anglin did not name the liability insurance carrier of JRMC in his complaint filed August 1, 2006, despite the fact that the *Low* decision was delivered on December 15, 2005, prior to the expiration of Mr. Anglin's savings limitations period, which ran on August 1, 2006. In other words, Mr. Anglin had more than eight months in which to refile his claim against the liability insurance carrier, TIG, in accord with the law as stated in *Low*.

We have previously rejected an appellant's argument that we apply our decision in *Low* prospectively in a case where the appellant had more than two months in which to refile a claim against a charitable defendant's insurance company in accordance with the law in *Low*. See *Felton v. Rebsamen Med. Ctr.*, 373 Ark. 472, 284 S.W.3d 486 (2008). Mr. Anglin acknowledges the *Felton* decision; however, he claims his case is distinguishable from *Felton*, because in his case, the one-year savings statute expired before this court decided *Low*. Mr. Anglin is mistaken. As noted above, the one-year savings statute expired on August 1, 2006, some eight months after our decision in *Low*.

Mr. Anglin's first amended complaint, filed on December 18, 2007, in an attempt to name the hospital's liability insurance carrier as a defendant, is time-barred, and despite his suggestion to the contrary, the relation-back doctrine is inapplicable. Pursuant to our holding in *Low*, Mr. Anglin was required to file a direct cause of action against the insurer of an institution entitled to charitable immunity. The complaint filed on August 1,

---

[2] Mr. Anglin filed a first amended complaint naming TIG as a defendant on December 18, 2007.

[3] The December 5, 2003 complaint named both JRMC and TIG as defendants.

2006, the day the savings statute expired, failed to include the insurer. Therefore, that complaint was a nullity. Where the complaint is a nullity, the relation-back doctrine is inapplicable because there is no pleading to amend and nothing to relate back. *See Brewer v. Poole*, 362 Ark. 1, 207 S.W.3d 458 (2005). Accordingly, the circuit court did not err in concluding that the relation-back doctrine was inapplicable.

Finally, Mr. Anglin contends that Arkansas Rule of Civil Procedure 56 is unconstitutional because it denies him his right of trial by jury as guaranteed by the Arkansas Constitution. In this case, the circuit court determined that JRMC was entitled to summary judgment as matter of law because it was immune from suit due to its charitable immunity. Mr. Anglin asserts that Rule 56 "encroaches on the right to trial by jury because it requires a party to demonstrate that there are genuine issues of material fact, or the case will be decided by the trial judge without a jury trial." He states that nothing in the Arkansas Constitution states that the right to a trial by jury extends only to those cases in which there are factual disputes. Further, Mr. Anglin contends that the issue of whether a hospital is entitled to a defense of governmental or charitable immunity is a question of fact for the jury to decide. Accordingly, Mr. Anglin asserts that the circuit court's final judgment granting JRMC's motion for summary judgment pursuant to Rule 56 was unconstitutional because he was not afforded the right to have these fact questions heard by a jury. Article 2, section 7 of the Arkansas Constitution provides in relevant part:

> The right of trial by jury shall remain inviolate, and shall extend to all cases at law, without regard to the amount in controversy; but a jury trial may be waived by the parties in all cases in the manner prescribed by law; and in all jury trials in civil cases, where as many as nine of the jurors agree upon a verdict, the verdict so agreed upon shall be returned as the verdict of such jury, provided, however, that where a verdict is returned by less than twelve jurors all the jurors consenting to such verdict shall sign the same.

The right to a jury trial under this provision is a fundamental right. *Craven v. Fulton Sanitation Serv., Inc.*, 361 Ark. 390, 206 S.W.3d 842 (2005); *Walker v. First Commercial Bank, N.A.*, 317 Ark. 617, 880 S.W.2d 316 (1994). This right extends to all cases that were triable at common law. *Craven, supra; Hopper v. Garner,*

328 Ark. 516, 944 S.W.2d 540 (1997). That is, the constitutional right to trial by jury extends only to the trial of issues of fact in civil and criminal causes. *Craven, supra; Jones v. Reed*, 267 Ark. 237, 590 S.W.2d 6 (1979). Thus, where there is no factual dispute, there is no constitutional right to a trial by jury.

Mr. Anglin maintains that the question of whether JRMC is entitled to charitable immunity is a question of material fact that entitles him to a jury trial. In support of this argument, he cites *Crossett Health Center v. Croswell*, 221 Ark. 874, 256 S.W.2d 548 (1953). *Croswell* is distinguishable from the instant case because there were disputed facts concerning whether the hospital was a charity. In that case, there was evidence that the hospital had been given land, funds, and furnishings by a lumber company that had an interest in the hospital. Moreover, the articles of incorporation provided that, upon liquidation of the hospital, the assets could be distributed by the board of governors in any manner consistent with state laws. Here, Mr. Anglin claims that because JRMC earned a profit in some years and because JRMC sues to collect unpaid medical bills, he has the right to present to the jury the question of whether JRMC is a charity that is immune from suit.

Where there are disputed facts concerning an organization's charitable status, those facts should be presented to the jury. *See Croswell, supra.* On the other hand, where there are no disputed facts regarding a defendant's charitable status, the determination of charitable status is a question of law for the court. In *George*, the appellant argued that there were factual issues with respect to the fourth, fifth, and eighth factors — whether the organization earned a profit, whether any profit or surplus must be used for charitable or eleemosynary purposes, and whether the directors and officers receive compensation. We disagreed, stating:

> As to the fourth, fifth, and eighth, appellant contends that these are all questions of fact and must therefore be tried rather than resolved on summary judgment. We disagree. While there may be fact issues involved, they are not matters of disputed fact. Rather, they are differing legal interpretations of undisputed facts. In such cases, an appellate court should grant summary judgment where reasonable persons would not reach different conclusions based upon those undisputed facts. *Leigh Winham, Inc. v. Reynolds Ins. Agency*, 279 Ark. 317, 651 S.W.2d 74 (1983). When each of the remaining

*Masterson*[4] factors are analyzed with the relevant undisputed facts, JRMC's charitable status is established.

*George*, 337 Ark. at 212-13, 987 S.W.2d at 713.

Here, the issues regarding JRMC's profit and its practice of filing suit to collect unpaid medical bills are not matters of disputed fact, but rather they are differing legal interpretations of undisputed facts. *See George, supra.* There are no disputed facts, as was the case in *Croswell.* Therefore, in this case, because no disputed facts existed, the circuit court correctly determined, as a matter of law, that JRMC was a charity entitled to immunity. Because there were no genuine issues of material fact, the circuit court did not err in granting summary judgment. We hold that, because a person is entitled to a jury trial only in the event that there are factual issues, and none exist in this case, Mr. Anglin was not unconstitutionally denied his right to a jury trial.

Affirmed.

BROWN, J., dissents.

ROBERT L. BROWN, Justice, dissenting. I would reverse the grant of summary judgment in this case because the issue of whether Johnson Regional Medical Center ("JRMC") is a charitable organization entitled to charitable immunity is contested by the parties and presents a genuine issue of material fact for the jury to resolve. The trap that the majority, and the trial court before it, fell into was to decide these issues of fact as a "legal interpretation of undisputed facts," all of which runs counter to the foundational principle in our jurisprudence that juries are fact-finders — not the judges.

As an additional matter, I disagree that all of the eight *George* factors are undisputed by the parties. *See George v. Jefferson Hospital Ass'n*, 337 Ark. 206, 987 S.W.2d 710 (1999). Harvie Anglin, as the plaintiff in this case, presented proof in deposition form that JRMC makes a net profit in most years; that it has over six million dollars in reserve funds; that it is the fourth largest employer in Clarksville; that government or private insurance accounts for the

---

[4] In *Masterson v. Stambuck*, 321 Ark. 391, 902 S.W.2d 803 (1995), the court adopted the eight-factor test to determine whether an organization is entitled to charitable immunity.

majority of its income and it receives an insignificant portion from donations; that charity care accounts for a very small part of the services it provides; that it carries liability insurance; and that its administrative employees are well paid. That evidence, at the very least, calls into question whether JRMC's profit and reserves are used for charitable care and the extent of free care it offers.

But the main fallacy in the majority opinion is that it seems to claim that, if the parties agree on the profit amounts and amount of charitable care, there is no genuine issue of material fact for purposes of deciding charitable immunity. But that misses the point entirely. Even assuming that no one disputes the accuracy of the amount of profit made by JRMC or the total amount of its reserve funds or the amount of charitable care it gives, the ultimate question is whether, based on all the factors, JRMC is, in fact, a charity. That is the issue to be resolved and that is a factual inquiry. Based on the majority's reasoning, however, no matter how much profit a hospital makes and no matter how little it offers in charitable care, as long as the parties do not contest those amounts, the hospital will never be entitled to a jury trial with respect to the hospital's status. That cannot be the law.

In *Crossett Health Center v. Croswell*, 221 Ark. 874, 883, 256 S.W.2d 548, 552 (1953), this court made the point clearly and undisputedly that it was up to the jury to consider the factors militating for and against charitable status and to determine whether "the Medical Center was a trust involving dedication of its property to the public." Moreover, this court has made it clear that we give the doctrine of charitable immunity "a very narrow construction." *Williams v. Jefferson Hosp. Ass'n*, 246 Ark. 1231, 442 S.W.2d 243 (1969). And yet in analyzing the eight *George* factors, the majority tilts in favor of JRMC and gives a broad construction for charitable immunity. For example, for factor three, which is whether the hospital's goal is to break even, JRMC admits that breaking even is not its goal and that any profit is used to fund hospital improvements. Presumably, "improvements" would also include compensation for directors and officers. The point is that there is no suggestion that profit goes solely to charitable care. The majority also announces that JRMC provides $849,043 in free medical services, which is at odds with Anglin's deposition proof. But, in addition, does Medicare and Medicaid pay for some of this free care? That question is unanswered in the majority's opinion.

After today's decision, it is difficult for me to imagine how any of the *George* factors or the issue of charitable immunity itself

would ever present an issue for the jury to decide. The majority seems to accept JRMC's figures and to close the door on that ever happening. As a result, deciding whether the *George* factors are met, and immunity itself, becomes solely for judges to resolve as a matter of law. Again, that is at odds with all of our summary-judgment jurisprudence when a genuine issue of fact remains to be resolved. In short, whether an entity is a charity is the material factual inquiry in summary judgment, not a "legal interpretation," as the majority would have it. It also bears mentioning that Arkansas is one of only four states that still provides absolute charitable immunity for its hospitals. *See* Janet Fairchild, Annotation,. *Tort Immunity of Nongovernmental Charities - Modern Status*, 25 A.L.R. 4th 517 (1983 & Supp. 2007).

I would deny the hospital's motion for summary judgment and remand for a jury trial on the question of whether JRMC is entitled to charitable immunity. For these reasons, I respectfully dissent.